The Honorable Richard A. Jones

1

2

3

4

5

6

7

8    UNITED STATES DISTRICT COURT FOR THE
     WESTERN DISTRICT OF WASHINGTON
9    AT SEATTLE

10   S.M.F., *et al.*,                          CASE NO.  2:22-cv-01193-RAJ
11
                              Plaintiffs,        UNITED STATES'
12                                               MOTION TO DISMISS
13            v.
                                                 Noted For Consideration:
14   UNITED STATES OF AMERICA,                   December 2, 2022
15                            Defendant.
16

17        Defendant United States of America respectfully moves for an order dismissing the

18   complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), or partially

19   dismissing the complaint pursuant to Fed. R. Civ. P. 12(b)(6).

20                          **I.    INTRODUCTION**

21        Plaintiffs S.M.F. and A.R.M. bring this suit against the United States under the Federal

22   Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680 ("FTCA"), seeking damages based on

23   Plaintiff S.M.F.'s detention and two-month separation from her daughter, A.R.M., who was six

24   years of age when they both entered the United States unlawfully near El Paso, Texas in May of

25   2018.  Plaintiffs assert four causes of action under Texas law for intentional infliction of emotional

26   distress, abuse of process, wrongful child abduction, and negligence.

27

**UNITED STATES ATTORNEY**
                                                  700 Stewart Street, Suite 5220
                                                  Seattle, Washington 98101-1271
                                                  206-553-7970

The United States has denounced the prior practice of separating children from their families at the United States–Mexico border and "condemn[ed] the human tragedy" that occurred because of the Zero-Tolerance Policy." *Establishment of Interagency Task Force on the Reunification of Families*, Exec. Order 14,011, § 1, 86 Fed. Reg. 8273, 8273 (Feb. 5, 2021).  And this Administration has committed the federal government to "protect family unity and ensure that children entering the United States are not separated from their families, except in the most extreme circumstances where a separation is clearly necessary for the safety and well-being of the child or is required by law."  The Court should not, however, reach the merits of Plaintiffs' FTCA claims for several reasons.

First, Plaintiffs' claims are barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), which shields the United States from liability for discretionary decision-making relating to the enforcement of federal criminal and immigration law.  Second, Plaintiffs' claims are barred by the FTCA's exception for actions taken while reasonably executing the law, as the governmental actions that resulted in the separation were authorized by federal law.  *Id.*  Third, there is no private analogue for Plaintiffs' claims, as required for a waiver of sovereign immunity under 28 U.S.C. § 1346(b)(1), because Plaintiffs' claims arise out of the enforcement of federal statutes, determinations relating to immigration status, and decisions regarding confinement, which are activities in which only the federal government, and not private parties, may engage.  Fourth, Plaintiffs' claim of negligence stemming from A.R.M.'s treatment at Cayuga Centers is completely barred by the FTCA's independent contractor exclusion.  Alternatively, Plaintiffs' claims for abuse of process and wrongful child abduction should be dismissed for failure to state a claim under 12(b)(6).  The parties met and conferred regarding this motion but were unable to reach a resolution.  Declaration of Nickolas Bohl, dated November 1, 2022 ("Bohl Decl."), at ¶ 2.

UNITED STATES' MOTION TO DISMISS
[2:22-cv-01193-RAJ] - 2

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

## II.   FACTUAL AND LEGAL BACKGROUND

**A.   Statutory Framework for Noncitizens[1] Entering the Country.**

Under Section 1325 of Title 8 of the U.S. Code, when an individual enters the United States between official ports of entry, he or she may be subject to prosecution for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers."  8 U.S.C § 1325(a).  Section 1325(a) is a misdemeanor that is punishable by a fine and "imprison[ment] not more than 6 months" for a first infraction.  *Id*.  When a parent and child are encountered together and the parent is transferred to criminal custody for prosecution, there is no parent or legal guardian available to provide care and physical custody for the minor.  Therefore, the minor becomes unaccompanied and thus subject to the provisions of the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(b)(3).  The TVPRA requires the minor to be transferred into the custody of the Department of Health and Human Services' Office of Refugee Resettlement ("ORR").  8 U.S.C. § 1232(b)(3).

All noncitizens who arrive in the United States, including those who arrive between ports of entry, are considered "applicant[s] for admission" and are "inspected by immigration officers" to determine their admissibility to the United States.  8 U.S.C. §§ 1225(a)(1), (a)(3), (b).  Individuals arriving in or present in the United States who, following inspection, are deemed inadmissible also are subject to removal from the United States and, as appropriate, detention pending such removal.  *See id*. § 1225(b)(1)(A)(i).  These provisions apply to both adults and children.  In some cases, the Department of Homeland Security ("DHS") may exercise its discretion to release a noncitizen from custody.  *See, e.g*., 8 U.S.C. §§ 1182(d)(5), 1226(a)(2).

**B.   Statutory Framework for Immigration Custody Relating to Unaccompanied Minors.**

Federal immigration law authorizes the United States to provide for the custody and care of minor children entering the United States without authorization.  Specifically, ORR is charged

---

[1] This brief uses the term "noncitizen" as equivalent to the statutory term "alien." *See Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (quoting 8 U.S.C. § 1101(a)(3)).

with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status."  6 U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1).  The term "unaccompanied alien child" or "UAC" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody."  6 U.S.C. § 279(g)(2).

Under the TVPRA, "[e]xcept in the case of exceptional circumstances, any department or agency … shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child."  8 U.S.C. § 1232(b)(3).  ORR seeks to place UACs "in the least restrictive setting that is in the best interest of the child." *Id.* § 1232(c)(2)(A).  However, ORR "shall not release such children upon their own recognizance." 6 U.S.C. § 279(2)(B).  Rather, once in ORR custody, there are detailed statutory and regulatory provisions that must be applied before the child is released to an approved sponsor.  *See* 8 U.S.C. § 1232(c)(3).  Congress requires that "an unaccompanied alien child may not be placed with a person . . . unless the Secretary of Health and Human Services makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being" and that "[s]uch determination shall, at a minimum, include verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child."  *Id.* § 1232(c)(3)(A).  In some instances, a home study is required.  *Id.* § 1232(c)(3)(B).

**C.   Flores Agreement Requirements.**

In 1996, the federal government entered into a settlement agreement referred to as the "Flores Agreement."  *See, e.g., Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (ECF No. 101).  The Flores Agreement "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the [immigration authorities]."  *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing Flores Agreement ¶ 9).  Under a binding interpretation of the Ninth

UNITED STATES' MOTION TO DISMISS
[2:22-cv-01193-RAJ] - 4

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1  Circuit, the Flores Agreement "unambiguously" applies both to unaccompanied minors and to

2  minors who are encountered together with their parents or legal guardians.  *Id.* at 901.  Under the

3  Flores Agreement, the government must expeditiously transfer any minor who cannot be released

4  from custody to a non-secure, licensed facility.  *Id*. at 902-03 (quoting Flores Agreement ¶ 12)).

5  The government must also "make and record the prompt and continuous efforts on its part toward

6  . . . release of the minor."  *Flores v. Rosen*, 984 F.3d 720, 738 (9th Cir. 2020) (quoting Flores

7  Agreement ¶ 14).

8         Notably, the Flores Agreement applies only to minors.  *Flores*, 828 F.3d at 901.  It "does

9  not address … the housing of family units and the scope of parental rights for adults apprehended

10  with their children[,]" and it "does not contemplate releasing a child to a parent who remains in

11  custody, because that would not be a 'release.'"  *Flores*, 828 F.3d at 906; *see also United States v.*

12  *Dominguez-Portillo*, No. 17-MJ-4409, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) ("[*Flores*]

13  does not provide that parents are entitled to care for their children if they were simultaneously

14  arrested by immigration authorities[.]").  Nor does the Flores Agreement provide any rights to

15  adult detainees, including any rights of release. *Flores*, 828 F.3d at 908; *see also Dominguez-*

16  *Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at *16

17  (W.D. Tex. Apr. 9, 2007).  Although the Flores Agreement gives preference to release of minors

18  to a parent, this preference "does not mean that the government must also make a parent available;

19  it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

20  **D.    Executive Branch Directives Regarding Immigration Enforcement.**

21         During the time period relevant to this action, the Executive Branch issued several

22  directives regarding enforcement of federal immigration laws.  Executive Order 13767 § 1, 82 Fed.

23  Reg. 8793 (Jan. 30, 2017).  First, in January 2017, the former President issued Executive Order

24  No. 13767 ("EO 13767") stating that "[i]t is the policy of the executive branch to … detain

25  individuals apprehended on suspicion of violating Federal or State law, including Federal

26  immigration law, pending further proceedings regarding those violations[.]" *Id*. § 2(b).  Executive

27  Order 13767 directed DHS to "ensure the detention of aliens apprehended for violations of

UNITED STATES' MOTION TO DISMISS
[2:22-cv-01193-RAJ] - 5

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law," *id*. § 6, and to exercise its parole authority "only on a case-by-case basis in accordance with the plain language of the statute … and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole." *Id*. § 11(d).

Second, on April 11, 2017, DOJ issued guidance to all federal prosecutors regarding a renewed commitment to criminal immigration enforcement and directed that federal law enforcement prioritize the prosecution of several immigration offenses, including illegal entry under 8 U.S.C. § 1325. *See* U.S. DOJ Memorandum on Renewed Commitment to Criminal Immigration Enforcement (April 11, 2017), available at https://www.justice.gov/opa/press-release/file/956841/download.

Third, on April 6, 2018, DOJ issued a "Memorandum for Federal Prosecutors along the Southwest Border." U.S. DOJ News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622 (the "Zero-Tolerance Memorandum"). The memorandum directed federal prosecutors along the Southwest border "to the extent practicable, and in consultation with DHS, to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)." *Id*. In addition, on May 4, 2018, the DHS Secretary approved the referral of noncitizens who had illegally entered the United States to U.S. Attorney's Offices for prosecution, including those arriving as family units. Consistent with EO 13767 and the April 2018 Zero-Tolerance Memorandum, DHS began to refer for prosecution increased numbers of adults – including those traveling with children – who unlawfully entered the United States on the Southwest border in violation of Section 1325. *See generally* Executive Order 13767. Minor children of those adults were transferred to ORR custody as required by the TVPRA. *See generally* William Wilberforce Trafficking Victims Protection Reauthorization Act (2013).

**E.    Plaintiffs' Complaint.**

According to the complaint, Plaintiffs S.M.F. and A.R.M. are a mother and daughter from

UNITED STATES' MOTION TO DISMISS
[2:22-cv-01193-RAJ] - 6

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

Honduras, who illegally crossed the United States-Mexico border on or around May 10, 2018. Dkt. 1 ("Compl."), at ¶¶ 13-14, 17. Shortly after crossing the border into Texas, they were apprehended by U.S. Customs and Border Protection ("CBP") Border Patrol Agents and initially held in a CBP facility in Texas. *Id.* at ¶¶ 17-23. On May 13, 2018, S.M.F. and A.R.M. were separated from each other when S.M.F. was taken to a new detention facility and A.R.M. was transferred by ORR to a transitional foster care program operated by Cayuga Centers in Bronx, New York. *Id.* at ¶¶ 24-28, 56-58. The following day, S.M.F. was criminally charged under 8 U.S.C. § 1325 for illegal entry in violation of 8 U.S.C. § 1325, remaining in federal criminal custody until her arraignment on May 30, 2018, when she pled guilty and was sentenced to time served. *Id.* at ¶¶ 29-31. On June 18, 2018, S.M.F. was released from detention. *Id.* at ¶ 48. S.M.F. and A.R.M. were separated for two months and reunited in July 2018. *Id.* at ¶¶ 27, 62.

Plaintiffs bring this action against the United States under the FTCA, 28 U.S.C. §§ 1346(b)(1), 2671-2680, seeking damages for intentional infliction of emotional distress (claim 1), abuse of process (claim 2), wrongful child abduction (claim 3), and negligence (claim 4). Compl. at ¶¶ 82-103. Plaintiffs allege they "suffered significant physical and emotional harm as a direct result of Defendant's unlawful conduct and violation of Plaintiffs' constitutional and statutory rights." *Id.* at ¶ 5.

**F.   Subsequent Policy Changes.**

After assuming office, President Biden took action to undo the policies that led to Plaintiffs' separation and to reunify the families that were affected by those policies. On February 2, 2021, the President issued an Executive Order that condemned the "human tragedy" of the prior Administration's Zero-Tolerance Policy, and that committed the United States government to "protect family unity and ensure that children entering the United States are not separated from their families, except in the most extreme circumstances where a separation is clearly necessary for the safety and well-being of the child or is required by law." Family Reunification Task Force EO § 1. That Order created a Task Force to identify and reunify families separated under the Zero-Tolerance Policy, and to make recommendations for the potential provision of immigration

UNITED STATES' MOTION TO DISMISS
[2:22-cv-01193-RAJ] - 7

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

benefits and mental-health services to those separated families. *Id.* § 4. In May 2022, the Task Force issued a report showing that 2,521 families had been reunified and that 331 additional families were in the process of reunification. Interim Progress Report, Interagency Task Force on the Reunification of Families, May 31, 2022, available at https://www.dhs.gov/sites/default/files/2022-06/22_0531_frtf_interim-progress-report-final.pdf.

### III.   STANDARD OF REVIEW

**A.   Federal Rule of Civil Procedure 12(b)(1).**

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039-40 (9th Cir. 2003). Courts must consider the threshold issue of jurisdiction before addressing the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 US 83, 94 (1998). Plaintiffs bear the burden of establishing jurisdiction because, by filing a complaint in federal court, they seek to invoke it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court may dismiss an action under Rule 12(b)(1) if the complaint does not allege facts sufficient to establish subject matter jurisdiction on its face or, even if the complaint asserts grounds for jurisdiction on its face, the evidence does not support a finding of jurisdiction. *Thornhill Publishing Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). A facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge allows the court to look beyond the complaint without "presum[ing] the truthfulness of the plaintiff's allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The Court also can hear evidence outside the pleadings and resolve factual disputes, if necessary, without treating the motion as one for summary judgment. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1997). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence,"

UNITED STATES' MOTION TO DISMISS
[2:22-cv-01193-RAJ] - 8

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1    and the plaintiff's allegations carry no presumption of truthfulness.  *Robinson*, 586 F.3d at 685.

2    Whether a facial or factual attack, because "[f]ederal courts … have only that power that is

3    authorized by Article III of the Constitution and the statutes enacted by Congress," *Bender v.*

4    *Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (citation omitted), the Court presumes

5    the action lies outside its limited jurisdiction, and the burden is on the party asserting jurisdiction

6    to establish that it exists. *Kokkonen,* 511 U.S. at 377.

7        A district court cannot hear a suit against the United States unless the government has

8    waived sovereign immunity.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  "Sovereign immunity

9    is jurisdictional in nature," meaning that a party's failure to establish a waiver of sovereign

10   immunity is properly resolved on a motion to dismiss for lack of subject matter jurisdiction under

11   Fed. R. Civ. P. 12(b)(1).  *See Robinson*, 586 F.3d at 685; *Sierra Club v. Whitman*, 268 F.3d 898,

12   905-06 (9th Cir. 2001).

13   **B.    Federal Rule of Civil Procedure 12(b)(6).**

14       A motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal

15   sufficiency of a complaint.  Although a court must accept as true all well-pled factual allegations

16   in a complaint, it need not credit allegations that are merely conclusory.  *See Ashcroft v. Iqbal*,

17   556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by

18   mere conclusory statements, do not suffice.") (internal citation and quotations omitted).  Further,

19   "the tenet that a court must accept as true all of the allegations contained in a complaint is

20   inapplicable to legal conclusions." *Id.* at 678.  "To survive a motion to dismiss, a complaint must

21   contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

22   face." *Id.*

23                              **IV.    ARGUMENT**

24   **A.    Plaintiffs' Claims Should Be Dismissed for Lack of Subject Matter Jurisdiction.**

25        **1.    Plaintiffs' Claims Are Barred By the Discretionary Function Exception.**

26             **a)    Legal Standard for Discretionary Function Exception Analysis.**

27

UNITED STATES' MOTION TO DISMISS
[2:22-cv-01193-RAJ] - 9

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1    The United States, as a sovereign entity, is immune from suit except insofar as it has

2  specifically and expressly consented to be sued. *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981)

3  (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)).  "[T]he terms of [the government's]

4  consent to be sued in any court define that court's jurisdiction to entertain the suit."  *Lehman*, 453

5  U.S. at 160 (internal quotes and citations omitted).  Absent a specific, express waiver, sovereign

6  immunity bars a suit against the government for lack of subject matter jurisdiction.  *See F.D.I.C.*,

7  510 U.S. at 475-76.

8    The FTCA is "a limited waiver of sovereign immunity."  *Gonzalez v. United States*, 814

9  F.3d 1022, 1026 (9th Cir. 2016).  The statute allows individuals to sue the United States when a

10  federal employee's conduct, within the scope of his or her employment, causes "injury, loss of

11  property, or personal injury or death."  28 U.S.C. § 1346(b)(1).  However, the FTCA's waiver of

12  sovereign immunity is subject to exceptions.  *See* 28 U.S.C. § 2680.  When an exception applies,

13  the United States retains its sovereign immunity, the court lacks jurisdiction, and the claim must

14  be dismissed.  *See Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000).

15    One such exception – the "discretionary function exception" ("DFE") – bars "[a]ny claim"

16  that is "based upon the exercise or performance or the failure to exercise or perform a discretionary

17  function or duty on the part of a federal agency or an employee of the Government, whether or not

18  the discretion involved be abused."  28 U.S.C. § 2680(a); *see also Gaubert v. United States*, 499

19  U.S. 315, 325 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

20    The Supreme Court has set forth a two-part test to determine if the DFE applies.  *Gaubert*,

21  499 U.S. at 328-32.  Courts must first ask whether the challenged conduct "'involve[s] an element

22  of judgment or choice,' as determined by the 'nature of the conduct, rather than the status of the

23  actor.'"  *Teplin v. United States*, No. 17-cv-02445-HSG, 2018 WL 1471907, at *4 (N.D. Cal. Mar.

24  26, 2018) (quoting *Gaubert*, 499 U.S. at 322); *see also Berkovitz*, 486 U.S. at 536; *Chadd v. United*

25  *States*, 794 F.3d 1104, 1109 (9th Cir. 2015).  The first prong is met unless "'a federal statute,

26  regulation, or policy specifically prescribes a course of action for an employee to follow.'"  *Sabow*

27  *v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996) (quoting *Berkovitz*, 486 U.S. at 536); *see also*

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

*Kelly v. United States*, 241 F.3d 755, 761 (9th Cir. 2001) ("[A] general regulation or policy. . .
does not remove discretion unless it specifically prescribes a course of conduct."); *Reed ex rel.
Allen v. U.S. Dep't of Interior*, 231 F.3d 501, 504 (9th Cir. 2000) (since "[n]o federal statute,
regulation, or policy require[d] a particular course of action," the agency's actions "could be no
other way than by the exercise of discretion").

Where no federal statute, regulation or policy prescribes a specific course of action to
follow, the challenged conduct involves an element of judgment. *See Berkovitz*, 486 U.S. at 536.
Even if a regulation contains a mandate to do something, if that mandate involves judgment or
choice, the discretion element is satisfied. *See GATX/Airlog Co. v. United States,* 286 F.3d 1168,
1174-75 (9th Cir. 2002). Further, where the policies that inform the conduct at issue allow the
exercise of discretion, the agency's acts or failures to act are presumed to be discretionary. *Lam
v. United States*, 979 F.3d 665, 674 (9th Cir. 2020). Finally, the applicable policies and authorities
must be considered in context – "the presence of a few, isolated provisions cast in mandatory
language does not transform an otherwise suggestive set of guidelines into binding agency
regulations." *Id*. at 677 (citing *Gonzalez*, 814 F.3d at 1030).

Second, if the conduct involves choice or discretion, courts must next determine whether
"the judgment of the government employee [is] 'of the kind that the discretionary function
exception was designed to shield.'" *Teplin*, 2018 WL 1471907, at *4 (quoting *Gaubert*, 499 U.S.
at 322-23). The DFE is designed to "'prevent judicial second-guessing of legislative and
administrative decisions grounded in social, economic, and political policy' through a tort action"
– therefore, courts construe it as "protect[ing] only governmental actions and decisions based on
considerations of public policy." *Id*.; *see also United States v. Varig Airlines*, 467 U.S. 797, 814
(1984). Thus, the focus of this inquiry is "whether the 'nature of the actions taken,' pursuant to an
exercise of discretion, 'are susceptible to policy analysis.'" *Teplin*, 2018 WL 1471907, at *4
(quoting *Gaubert*, 499 U.S. at 325); *see also Whisnant v. United States*, 400 F.3d 1177, 1181 (9th
Cir. 2005) (the discretion must be "susceptible to social, economic, or political policy analysis");
*Nurse*, 226 F.3d at 1001 (explaining that the decision "'need not actually be grounded in policy

UNITED STATES' MOTION TO DISMISS
[2:22-cv-01193-RAJ] - 11

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

considerations' so long as it is, 'by its nature, susceptible to a policy analysis.'") (quoting *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998)).

The government need not "prove that it considered these factors and made a conscious decision on the basis of them." *Kennewick Irr. Dist. v. United States,* 880 F.2d 1018, 1028 (9th Cir. 1989). Indeed, under the second prong, the government actors' subjective motive is immaterial because "the focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation" but rather "on the nature of the actions taken and on whether they are *susceptible* to policy analysis." *Gonzalez,* 814 F.3d at 1027-28 (quoting *Gaubert,* 499 U.S. at 325) (emphasis added). Where the relevant policies provide for discretion, it must be presumed that the government's actions are grounded in policy when exercising that discretion. *Lam*, 979 F.3d at 681 (citing *Gaubert*, 499 U.S. at 324; *Chadd*, 794 F.3d at 1104). And the statutory text confirms that the exception applies "whether or not the discretion involved [was] abused" by United States officials. 28 U.S.C. § 2680(a); *see also Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008) (DFE applies where there are allegations of "malicious and bad faith conduct" because "subjective intent is irrelevant to our analysis").

If both prongs of the *Gaubert/Berkowitz* test are met, the DFE applies, the United States retains its sovereign immunity, the court lacks jurisdiction, and the claim must be dismissed. *See Nurse*, 226 F.3d at 1000. This result applies even where the government may have been negligent in the performance of such discretionary acts, as "negligence is irrelevant to the discretionary function inquiry." *Routh v. United States*, 941 F.2d 853, 855 (9th Cir. 1991). As the legislative history of the FTCA explains, the statute's limited waiver of sovereign immunity was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion." H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.

UNITED STATES' MOTION TO DISMISS
[2:22-cv-01193-RAJ] - 12

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

### b) The Decision to Detain Plaintiffs Separately Is Subject to Discretion Grounded in Policy Considerations.

Although Plaintiffs allege harm stemming from the government's decisions to apprehend S.M.F. and to prosecute her for unlawful entry (and in that regard, to separate S.M.F. from A.R.M.), the DFE applies to the government decisions at issue in Plaintiffs' complaint because they involved an element of judgment or choice, and are susceptible to policy analysis.

First, the decisions described in Plaintiffs' complaint are discretionary. As the Supreme Court has recognized, "[t]he Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Indeed, "[t]he Supreme Court has long recognized that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'" *In re Sealed Case*, 829 F.2d 50, 63 (D.C. Cir. 1987) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)); *Smith v. United States*, 375 F.2d 243, 247 (5th Cir. 1967) ("decisions concerning enforcement" are matters of "discretion").

Concerns about "subjecting the prosecutor's motives and decision making to outside inquiry" are magnified in the immigration context. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999). There, the federal government possesses the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1). "Congress has placed the responsibility of determining where aliens are detained within the discretion of the [Secretary]." *Comm. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986); *see also Gandarillas-Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings … and therefore, to transfer aliens from one detention center to another."); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (holding that the Attorney General has discretion over the location of detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that the "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from" statute).

1      Decisions relating to noncitizens, including placement and detention, are so "vitally and

2  intricately interwoven with contemporaneous policies [and] so exclusively entrusted to the

3  political branches of government as to be largely immune from judicial inquiry or interference."

4  *United States v. Lopez-Flores*, 63 F.3d 1468, 1474 (9th Cir. 1995) (quoting *Harisiades v.*

5  *Shaughnessy*, 342 U.S. 580, 588-89 (1952)); *Mirmehdi v. United States*, 662 F.3d 1073, 1081-82

6  (9th Cir. 2011) ("Because the decision to detain an alien pending resolution of immigration

7  proceedings is explicitly committed to the discretion of the Attorney General and implicates issues

8  of foreign policy, it falls within this [FTCA] exception."); *Hernandez v. United States*, 83 F. App'x

9  206 (9th Cir. 2003) (security measures pertaining to prisoners in a detention center are within the

10  FTCA's DFE); *see also Cohen v. United States,* 151 F.3d 1338, 1342 (11th Cir. 1998) (decisions

11  where to place prisoners are policy-based decisions protected by the DFE); *Bailor v. Salvation*

12  *Army,* 51 F.3d 678, 685 (7th Cir. 1995) (decisions whether to detain or release are policy-based

13  decisions protected by the DFE); *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018)

14  (placement decisions are susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d

15  39, 44 (1st Cir. 2003) ("assignment to particular institutions or units … must be viewed as falling

16  within the discretionary function exception to the FTCA").

17      This discretion necessarily entails decisions regarding with whom noncitizens are detained,

18  including decisions regarding whether adults and minors can be detained in the same facility and

19  whether to detain family members together.  *See Peña Arita v. United States*, 470 F. Supp. 3d 663,

20  691-92 (S.D. Tex. 2020) (decisions by DHS to separate family members are protected by the DFE).

21  Moreover, the Flores Agreement does not require release of a parent or mandate that parents be

22  housed with a child.  *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at

23  *14-15; *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007);

24  *see supra* at pgs. 4-5.  In this case, Plaintiffs do not allege that government officials violated any

25  statute or regulation prescribing a specific course of action to follow in connection with the

26  prosecution and detention of S.M.F. and her resulting separation from A.R.M. in this case.  Instead,

27

UNITED STATES' MOTION TO DISMISS
[2:22-cv-01193-RAJ] - 14

the challenged decisions were the result of the exercise of discretion, thus satisfying the first prong of the DFE.

Second, as other courts have recognized, policies related to the immigration custody of adults as well as the Zero-Tolerance Memorandum – which was subsequently revoked – "amount[] to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General." *Mejia-Mejia v. ICE*, No 18-1445 (PLF), 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019); *see also Peña Arita*, 470 F. Supp. 3d at 686-87. The Court should decline to engage in the sort of "second-guessing" and inquiry into government actors' intent in making decisions that the DFE was designed to prevent. *Berkovitz*, 486 U.S. at 536; *see also Lam*, 979 F.3d at 673 (citing *Varig*, 467 U.S. at 814). In determining the applicability of the DFE, the Court looks only at the nature of the conduct or decision at issue from a general and objective perspective – subjective intent is not part of the analysis. *Gonzalez*, 814 F.3d at 1032. Here, however, the government's decisions were not merely "susceptible to" policy analysis, but the government spelled out the policies it sought to further through its enforcement efforts in a series of Executive Branch directives. Indeed, notwithstanding the merit of these prior policy choices, they were policy choices nonetheless, even as described by the complaint. *See*, *e.g.*, Compl. at ¶¶ 1-4, 29, 32-35.

In *Peña Arita*, 470 F. Supp. 3d 663, the court dismissed FTCA claims similarly arising from the Zero-Tolerance Policy. In dismissing the claims, the *Peña Arita* court agreed with the government that the "family separation policy itself and its implementation by officers in the field are discretionary." *Id.* at 687 ("prosecutorial judgment is a matter of choice, and obviously grounded in considerations of public policy – such as the United States Attorney General's priorities and United States Attorneys' discretion – that is intended to be shielded by the discretionary function exception."). The court concluded that the challenged decision-making was "'grounded in social, economic, and policy'" considerations that the court was "without jurisdiction to second-guess." *Id*. (quoting *Gaubert*, 499 U.S. at 323). The *Peña Arita* court held that, "to the extent Plaintiffs attempt to bring a constitutional tort claim against the United States

under the Federal Tort Claims Act, or assert that the Constitution itself furnishes a nondiscretionary standard of medical care that is actionable under the FTCA in the event such care is not provided, such claim is entirely jurisdictionally barred." *Id.* at. 688.

### c) Plaintiffs' Remaining Claim Concerning S.M.F.'s Detention Is Barred by the DFE.

Plaintiffs' complaint additionally alleges that they suffered harm related to the conditions of their confinement.  For example, Plaintiffs allege that S.M.F. was "detained in various Texas facilities under harsh conditions" and was "forced to sleep on the floor, on thin mats with no blankets," among other allegations.  Compl. at ¶¶ 39-47.

While the government is committed to safe and humane treatment of every individual in detention, Plaintiffs' conditions-of-confinement claims are barred by the DFE.  Courts have repeatedly held that these other challenged "conditions of confinement" acts or omissions are independently barred by the DFE because they involve discretionary decisions susceptible to policy considerations.  *See, e.g., Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018) (deficiencies in computer database that failed to reveal immigration status protected by discretionary function exception); *Cosby v. Marshals Service*, 520 F. App'x 819, 821 (11th Cir. 2013) (detainee decisions involve "several policy considerations … including prison security, the allocation of finite resources, and the logistics of prisoner transportation if transfer to an off-site facility is an option"); *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010) (the DFE shielded decision to transfer prisoner); *Antonelli v. Crow*, No. 08-261, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which a myriad of conditions of confinement claims, including claims based on temperature and crowding, are barred by the DFE); *Lineberry v. United States*, No. 3:08-cv-0597, 2009 WL 763052, at *6 (N.D. Tex. Mar. 23, 2009) ("Plaintiff's allegation of negligent overcrowding falls within the discretionary function exception"); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va.

UNITED STATES' MOTION TO DISMISS
[2:22-cv-01193-RAJ] - 16

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim.").

### d) Plaintiffs' Vague Assertion of Unconstitutional Conduct Does Not Preclude Application of the DFE in this Case.

A plaintiff cannot circumvent the DFE simply by alleging a violation of a constitutional right.  In *Gaubert*, the Supreme Court held that, where "a federal statute, policy, or regulation specifically prescribes a course of action for an employee to follow," there is no further discretion to exercise.  499 U.S. at 322.  And in *Nurse*, the Ninth Circuit held that a constitutional violation "may" remove conduct from discretion but expressly left open the question of "the level of specificity with which a constitutional proscription must be articulated to remove the discretion of a federal actor."  226 F.3d at 1002 n.2; *see also Fazaga v. Fed. Bureau of Investigation*, 916 F.3d 1202, 1251 (9th Cir. 2019) ("[I]f the district court instead determines that Defendants did violate a nondiscretionary federal constitutional … directive, the FTCA claims may be able to proceed to that degree."); *accord Garza v. United States*, 161 F. App'x 341, 343 (5th Cir. 2005) (holding that the Eighth Amendment's prohibition against cruel and unusual punishment did not define a course of action "specific enough to render the discretionary function exception inapplicable").

Here, Plaintiffs do not allege the violation of any constitutional provision with the requisite degree of specificity required by *Gaubert*.  Plaintiffs instead vaguely describe Defendant's conduct as "unlawful conduct and [a] violation of Plaintiffs' constitutional and statutory rights."  Compl. at ¶ 5.  On that basis alone, Plaintiffs' allegation is immaterial to the applicability of the DFE.

### 2. Plaintiffs' Claim Relating to the Decision to Detain S.M.F. Separately From A.R.M. Is Barred by the FTCA's Exception for Actions Taken While Reasonably Executing Law.

Plaintiffs' claims relating to the decision to detain them separately are independently precluded because the FTCA prevents the United States from being held liable for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a).  Thus, "[w]here government employees act pursuant to and in furtherance of

UNITED STATES' MOTION TO DISMISS
[2:22-cv-01193-RAJ] - 17

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1    regulations, resulting harm is not compensable under the act[.]" *Dupree v. United States*, 247 F.2d

2    819, 824 (3d Cir. 1957); *see also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970)

3    (claim based on "enforcement of 'rules and regulations'" barred by § 2680(a)).

4         This exception "bars tests by tort action of the legality of statutes and regulations."

5    *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *see also* H.R. Rep. No. 77-2245, 77th Cong., 2d

6    Sess., at 10 (noting that it was not "desirable or intended that the constitutionality of legislation,

7    or the legality of a rule or regulation should be tested through the medium of a damage suit for

8    tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (The FTCA does not waive

9    sovereign immunity for claims based on employees' acts "performed under and in furtherance of

10   the regulation … even though the regulation may be irregular or ineffective"). Thus, where a

11   government employee's actions are authorized by statute or regulation – even if that statute or

12   regulation is later found unconstitutional or invalid – this exception applies, and the claim must be

13   dismissed for lack of subject matter jurisdiction. *See Borquez v. United States*, 773 F.2d 1050,

14   1053 (9th Cir. 1985); *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 366

15   (7th Cir. 1979); *Sickman v. United States*, 184 F.2d 616, 619 (7th Cir. 1950).

16        Here, the United States is required to "transfer the custody" of children to the care of ORR

17   "not later than 72 hours after" determining that there is no parent available to provide care and

18   physical custody, absent exceptional circumstances. 8 U.S.C. § 1232(b)(3). In this case, the

19   government made the determination that S.M.F. was unable to provide care and physical custody

20   for A.R.M. The government made the discretionary decisions to prosecute S.M.F. and to detain

21   her in a secure immigration detention facility separate from A.R.M. Once those protected

22   discretionary determinations had been made, the TVPRA—which Plaintiffs do not challenge—

23   required the separation of children from adults to provide care and physical custody while the

24   adults were in immigration detention. The enforcement of that statutory command cannot form

25   the basis of an FTCA claim.

26

27

UNITED STATES' MOTION TO DISMISS
[2:22-cv-01193-RAJ] - 18

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

### 3.  Plaintiffs' Claims Are Barred Because There Is No Private-Person Analogue.

Plaintiffs' claims also fail because the government acts that Plaintiffs challenge have no private person analogue.  The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  The FTCA does not waive sovereign immunity for claims against the United States based on governmental "action of the type that private persons could not engage in and hence could not be liable for under local law."  *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (internal quotes omitted).  The FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing liability under the FTCA."  *United States v. Olson*, 546 U.S. 43, 45-46 (2005).  Though the private analogue need not be exact, a plaintiff must offer "a persuasive analogy" showing that the government actor sued would be subject to liability under state law if it were a private person.  *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).

Because only the federal government has the authority to enforce federal criminal and immigration laws and make detention determinations, there is no private-person analogue that would support a claim under the FTCA.  The alleged harms here stem from the federal government's decisions to enforce federal immigration laws, criminally prosecute certain individuals, and hold S.M.F. in custody pending immigration proceedings or prosecution, resulting in A.R.M.'s placement in the care and custody of ORR.  The United States has not waived its sovereign immunity for such decisions to enforce federal law, as they have no private-person counterpart.  *See, e.g., Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well."); *Elgamal v. United States*, No. 13-00967, 2015 WL 13648070, at *5 (D. Ariz. July 8, 2015) (recognizing that "immigration matters" are "an inherently governmental function"); *Bhuiyan v. United States*, 772

F. App'x 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no private analogue to governmental withdrawal of immigration benefits.").

### 4. Plaintiffs' Claim of Negligence from A.R.M.'s Treatment at Cayuga Centers Is Barred by the FTCA's Independent Contractor Exclusion.

The FTCA only waives sovereign immunity for tortious conduct of an "employee of the Government," and it expressly "excludes 'any contractor with the United States.'" *Id.* (quoting 28 U.S.C. § 2671). The FTCA thus preserves sovereign immunity for torts committed by government contractors or their employees. *Id.*

The complaint alleges no tortious act or omission by any employee of the United States after A.R.M. was transferred to Cayuga Centers. Rather, it alleges that "A.R.M. was taken to a transitional shelter operated by Cayuga Centers in New York." Compl. at ¶¶ 57-58. Plaintiffs allege that the shelter: (1) conducted blood tests and administered vaccines to A.R.M. without S.M.F.'s knowledge or consent; (2) failed to flag A.R.M.'s prior diagnosis of and treatment for asthma; (3) failed to provide A.R.M. with proper nutrition and sanitation; (4) forced A.R.M. to get up early in the mornings and sometimes sleep in the same bed as other children; and (5) told A.R.M. that her mother had abandoned her permanently. *Id.* at ¶¶ 60-65.

The complaint does not allege that the Cayuga Centers staff who committed the allegedly tortious acts or omissions were employees of the United States. On the contrary, it alleges that Cayuga Centers is a non-profit organization that "contracts" with ORR. *Id.* at ¶ 58; *see also* Declaration of James De La Cruz, dated November 1, 2022 ("De La Cruz Decl."), at ¶¶ 3-8 and Exhibit A. And as explained in *Walding v. United States*, 955 F. Supp. 2d 759 (W.D. Tex. 2013), ORR contractors that provide shelter for UCs are not employees of the United States within the meaning of the FTCA. *Id.* at 791-811.

"A critical element in distinguishing [a statutory employee] from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" *United States v. Orleans*, 425 U.S. 807, 807 (1976) (citation omitted). ORR's contractual relationship with Cayuga affords the federal government no such control. In *Logue v. United*

UNITED STATES' MOTION TO DISMISS
[2:22-cv-01193-RAJ] - 20

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1  *States*, 412 U.S. 521, 528 (1973), the Supreme Court held that employees of a county jail that

2  housed federal prisoners pursuant to a contract with the Federal Bureau of Prisons ("BOP") were

3  not government employees for purposes of the FTCA.  Although the contract required the jail to

4  comply with BOP rules and regulations prescribing standards of treatment, and the United States

5  reserved rights of inspection to enter the jail to determine its compliance with the contract, the

6  contract did not authorize the United States to physically supervise the jail's employees.  *Id.* at

7  528-32.  "In short, the United States could take action to compel compliance with federal standards,

8  but it did not supervise operations."  *Orleans*, 425 U.S. at 813 (explaining *Logue*).

9       Thus, the FTCA's exclusion of contractors is not overcome by "[c]ontractual provisions

10  directing detailed performance," nor by "[d]etailed regulations and inspections," nor by "the ability

11  to compel compliance with federal regulation."  *Autery v. United States*, 424 F.3d 944, 957 (9th

12  Cir. 2005).  Rather, "[t]here must be substantial supervision over the day-to-day operations of the

13  contractor in order to find that the individual was acting as a government employee."  *Id.* (quoting

14  *Letnes v. United States,* 820 F.2d 1517, 1519 (9th Cir.1987)).  ORR does not exercise substantial

15  supervision and control over the "day-to day operations" (*Autery*) or "detailed physical

16  performance" (*Orleans*) of contractors like Cayuga Centers but only conducts general oversight to

17  ensure compliance with governing regulations, policies, and agreements.  *See* De La Cruz Decl. at

18  ¶¶ 9-13. Therefore, as in *Logue* and *Walding*, Cayuga Centers' staff and foster parents are not

19  employees of the government, and the FTCA does not reach them.

20       The complaint does not allege that ORR negligently selected or negligently supervised

21  Cayuga Centers—and for good reason.  As *Walding* further held, such claims are barred by the

22  discretionary function exception.  The selection of a contractor to provide custody and care of

23  unaccompanied minors is left to ORR's discretion, and "the ultimate choice of facility for housing

24  unaccompanied alien children is a decision vested with policy considerations."  *Walding*, 955 F.

25  Supp. 2d at 771-72.  In addition, ORR has discretion regarding how to supervise its grantees, which

26  involves "policy decisions concerning how to allocate its resources to oversee the facilities and

27  personnel."  *Id.* at 783; *see also In re Consol. U.S. Atmospheric Testing Litig.,* 820 F.2d 982, 995

UNITED STATES' MOTION TO DISMISS
[2:22-cv-01193-RAJ] - 21

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1   (9th Cir. 1987) (holding that the DFE barred claim that government negligently supervised

2   contractor).

3          Unable to allege negligent selection or negligent supervision, or that the staff of Cayuga

4   Centers are employees of the United States, Plaintiffs rest their claim on vicarious liability: The

5   complaint asserts that because "ORR was charged by law with 'coordinating and implementing

6   the care and placement' of A.R.M.,'" ORR "remained legally responsible for A.R.M.'s adequate

7   care and safety after it placed her in Cayuga Centers' care." *Id.* at ¶ 59 (quoting 6 U.S.C. §

8   279(b)(1) and 8 U.S.C. § 1232(b)(1)).  But every allegation regarding alleged failures once A.R.M.

9   was transferred from CBP custody (*id.* at ¶¶ 60-65) is about Cayuga Centers, not ORR.[2]

10         Plaintiffs' vicarious-liability claim is untenable.  The above-cited provisions of the TVPRA

11  and the INA that Plaintiffs contend make ORR "legally responsible" contain no consent to sue the

12  United States and thus are not waivers of sovereign immunity.  The FTCA is the only waiver of

13  sovereign immunity for tort claims against the United States, and it expressly excludes liability for

14  the acts or omissions of government contractors.  Because no waiver of sovereign immunity

15  applies, this claim too is jurisdictionally barred.

16  **B.   Plaintiffs' Abuse of Process and Wrongful Child Abduction Claims Should Also Be
         Dismissed for Failure to State a Claim.**

17         **1.   Abuse of Process**

18         Plaintiffs' abuse of process claim should be dismissed for the same reasons this Court

19  dismissed Plaintiffs' abuse of process claim in a related case involving the same legal issues and

20  same legal counsel.  *See E.L.A., et al. v. USA*, C20-1524-RAJ, Order (Dkt. 36), at pgs. 11-12;

21  Order denying Motion for Reconsideration (Dkt. 40).[3]

22         "In multistate tort actions brought under the FTCA, courts are required 'to look in the first

23  instance to the law of the place where the [tortious] acts … took place[,]', not where their operative

24

25  ───────────────

26  [2] Plaintiffs allege that "no ORR or Cayuga Centers personnel flagged A.R.M.'s prior diagnosis of and treatment for
    asthma." *Id.* at ¶ 60.  But unaccompanied minors such as A.R.M. are directly transferred from CBP's custody to a
    shelter and ORR does not perform (nor is required to) independent medical assessments prior to the transfer.  *See* De

27  La Cruz Decl. at ¶ 14.
    [3] *See* Plaintiffs' Notice of Related Cases (Dkt. 7).

UNITED STATES' MOTION TO DISMISS                          **UNITED STATES ATTORNEY**
[2:22-cv-01193-RAJ] - 22                                  700 Stewart Street, Suite 5220
                                                          Seattle, Washington 98101-1271
                                                          206-553-7970

effects were felt." *Appolon v. United States*, No. 16-cv-2275, 2017 WL 3994925, at *10 (E.D.N.Y. Sept. 7, 2017) (quoting *Richard v. United States*, 369 U.S. 1, 10 (1962)).  Accordingly, Texas law applies to Plaintiffs' abuse of process claim.  To prevail in an abuse of process claim under Texas law, "a plaintiff must show that (1) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in engaging in such misuse of process; and (3) the misuse of process resulted in damage to the plaintiff." *Landry's, Inc. v. Animal Legal Defense Fund*, 566 S.W.3d 41, 63 (Tex. App. 2018) (internal quotation marks and citation omitted).

In *E.L.A., et al. v USA*, this Court agreed that the plaintiffs failed to plead an abuse of process claim because the plaintiff parent "was properly charged with illegal entry, therefore failing to state the first element of an abuse of process claim under Texas law.  Order at pg. 12. For the exact same reason, this claim must be dismissed.

### 2. Wrongful Child Abduction

Finally, Plaintiffs' wrongful child abduction claim should be dismissed because Plaintiffs fail to allege a claim for wrongful child abduction under Texas state law.  After the parties met and conferred, the government understands that Plaintiffs rely on the Texas common law tort for "child abduction," subsequently codified as "Parental Liability – Civil Liability for Interference with Possessory Interest in Child" in the Texas Family Code.  However, the statute itself and the post and pre-statutory case law on child abduction claims make it clear that this tort only applies when a person (usually a relative) violates a prior parental or custody *order* from the court.

For example, the statute provides that "[a] person who takes or retains possession of a child or who conceals the whereabouts of a child in violation of a possessory right of another person may be liable for damages to that person." Tex. Fam. Code § 42.002(a).  And "possessory right" is defined as "a court-ordered right of possession of or access to a child, including conservatorship, custody, and visitation." Tex. Fam. Code § 42.001(2).  "Order" is defined as "a temporary or final order of the court of this state or another state or nation." Tex. Fam. Code § 42.001(1); *see also Finley v. May*, No. 07-17-233-CV, 2017 WL 5763076, at *3 (Tex. App. – Amarillo, Nov. 28,

UNITED STATES' MOTION TO DISMISS
[2:22-cv-01193-RAJ] - 23

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

2017) (explaining that possessory rights were "those rights dictated in a court order"); *Hardy v. Mitchell*, 195 S.W.3d 862, 864-65 (Tex. App. – Dallas 2006) (holding that claim cannot be characterized as a claim for interference with a possessory right under chapter 42 of the Texas Family Code because the child was not the subject of any court order).  And to the extent Plaintiffs rely on a non-statutory common law claim of wrongful child abduction, cases similarly limit those claims to circumstances where custody or other court orders were violated.  *See, e.g.*, *Silcott v. Oglesby*, 721 S.W.2d 290, 293 (Tex. 1986) (recognizing a common law actionable tort "for child abduction in violation of a *custody order*") (emphasis added).  The government is not aware of any Texas case where the common law application of wrongful abduction applies outside the context of an alleged violation of a court order.

Here, Plaintiffs do not allege facts sufficient to plead wrongful child abduction in violation of a custody order or other order from a court of law.  Accordingly, their wrongful child abduction claim should be dismissed.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiffs' complaint in its entirety.

//
//
//
//
//
//
//
//
//
//
//

UNITED STATES' MOTION TO DISMISS
[2:22-cv-01193-RAJ] - 24

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1    DATED this 1st day of November, 2022.

2                        Respectfully submitted,

3                        NICHOLAS W. BROWN

4                        United States Attorney

5                        *s/ Nickolas Bohl*

6                        NICKOLAS BOHL, WSBA No. 48978

7                        *s/ Kristen R. Vogel*

8                        KRISTEN R. VOGEL, NY No. 5195664
Assistant United States Attorneys

9                        United States Attorney's Office

10                      700 Stewart Street, Suite 5220
Seattle, Washington  98101-1271

11                      Phone:  206-553-4063
Fax:  206-553-4067

12                      Email:  nickolas.bohl@usdoj.gov
Email:  kristen.vogel@usdoj.gov

13                      *Attorneys for United States of America*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

UNITED STATES' MOTION TO DISMISS
[2:22-cv-01193-RAJ] - 25

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970