The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| S.M.F. and A.R.M.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 2:22-cv-01193-RAJ<br><br>**RESPONSE TO DEFENDANT'S MOTION TO DISMISS**<br><br>Note on Motion Calendar:<br>December 2, 2022<br><br>**ORAL ARGUMENT REQUESTED** |

**INTRODUCTION**

Plaintiffs, an asylum-seeking mother and her young child, seek to hold Defendant United States accountable for one of the most outrageous and shameful episodes of governmental misconduct in U.S. immigration history: the Trump administration's family-separation program targeting asylum seekers. Defendant's motion to dismiss recognizes that "the United States has denounced the prior practice of separating children from their families at the [U.S.]-Mexico border and 'condemn[ed] the human tragedy' that occurred because of the Zero-Tolerance Policy." Dkt. 12 at 2 (second alteration in original) (citation omitted). Yet at the same time, Defendant contends it may not be held responsible because its prior conduct amounted to nothing more than a discretionary policy determination made by its officers. But federal officers have no discretion to violate the law or the Constitution. Indeed, Defendant's employees had no more discretion to emotionally and psychologically torture and permanently damage families by separating children from their parents than they did to physically torture them. Yet that is just what they did. As Plaintiffs have alleged, the "trauma that [they] and other parents and children suffered was not an incidental byproduct of the policy. It was the very point. The government *sought* to inflict extreme emotional distress and other harms on migrant families by forcibly separating them," with the goal of forcing them to abandon their claims for protection and deterring others fleeing persecution from attempting to seek refuge in the United States. Dkt. 1 ¶ 2.

Nor can Defendant claim its officers were reasonably executing the law. No law required that six-year-old A.R.M. be cruelly torn from her mother's embrace, and no law required that she remain separated incommunicado from her mother for more than two months, including after the completion of S.M.F.'s criminal case. Notably, the government's practice before and after the Zero-Tolerance Policy underscores this point. Prior to the policy, the Department of Homeland Security (DHS) ensured that children and parents remained together in immigration custody; and later, the Biden administration repudiated the outrageous policy. Indeed, Defendant does not

even dispute that the family-separation policy generally, nor its application to Plaintiffs, violated the U.S. Constitution. Thus, neither the discretionary-function nor the due-care exception applies. Similarly, Defendant's claim that it may not be held liable simply because private persons do not engage in immigration-enforcement activities ignores the many decisions from district courts in this circuit repeatedly rejecting the same arguments.

The government intentionally traumatized Plaintiffs by separating A.R.M. from her mother for over two months, failing to provide either of them with information about each other's whereabouts, failing to facilitate any communication between the mother and child, and failing to implement the most basic tracking system to ensure that the family could be promptly reunited. The Federal Tort Claims Act (FTCA) provides individuals a right to compensation where the United States government commits tortious acts that cause harm, and here Plaintiffs have pleaded facts demonstrating that they have a right to compensation for the extraordinary harms they suffered.

## ARGUMENT

### I.   The Discretionary-Function Exception Is Inapplicable to This Case.

Defendant's first argument—that the United States has not waived sovereign immunity as to cases involving the exercise of discretion—is meritless. The FTCA waives the government's sovereign immunity as to lawsuits seeking compensation for tortious conduct committed by federal officials. 28 U.S.C. § 2674. However, Congress provided certain exceptions to this waiver, including the "discretionary function exception" (DFE) which applies to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the [g]overnment." *Id.* § 2680(a). The DFE bars claims based on actions that involve (1) an element of judgment or choice and (2) public-policy considerations. *See United States v. Gaubert*, 499 U.S. 315, 322–23 (1991). Notably, "the United States bears the burden of proving the applicability of one of the exceptions

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

to the FTCA's general waiver of immunity." *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).

Here, Defendant's argument fails at the first prong. Federal officers do not have discretion to violate federal law, including the U.S. Constitution. Moreover, Plaintiffs' injuries did not result from any discretionary decision or judgment made by immigration officers in the field. They separated six-year-old A.R.M. from her mother due to a policy mandate issued by the highest levels of the Trump administration to separate migrant children and parents.

> A.   Federal Officers Have No Discretion to Violate the U.S. Constitution or Other Federal Laws.

Defendant argues that the family-separation policy and the resulting actions detailed in Plaintiffs' complaint are the result of discretionary decisions. Dkt. 12 at 13–16. However, the DFE is inapplicable here because the government does not have the "discretion" to violate the Constitution or any other law. *See, e.g.*, *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000) ("In general, governmental conduct cannot be discretionary if it violates a legal mandate."); *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004) ("[T]he Constitution can limit the discretion of federal officials such that the FTCA's [DFE] will not apply." (first alteration in original) (citation omitted)); *Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir. 2016) (similar). "In sum, the discretionary function exception insulates the Government from liability" only where "the action challenged in the case involves the *permissible* exercise of policy judgment." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 537 (1988) (emphasis added).

Plaintiffs' complaint explicitly alleges they "suffered significant physical and emotional harm as a direct result of Defendant's unlawful conduct and violation of Plaintiffs' constitutional and statutory rights." Dkt. 1 ¶ 5. The complaint details these violations in several ways. It states:

> Plaintiffs' claims concern the entirely predictable—and actually *intended*—harms caused by Defendant's unprecedented policy and practice of systematically separating asylum-seeking parents and children. Defendant's employees forcibly separated Plaintiffs after they entered the United States in May 2018. They then detained Plaintiffs in separate facilities thousands of miles apart, keeping S.M.F.

RESP. TO DEF'S MOT. TO DISMISS – 3
Case No. 2:22-cv-01193-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

in Texas while forcibly transferring A.R.M. to a facility in New York. S.M.F. was unable to hold her daughter again until the end of July 2018—when they were finally reunited in Seattle after more than two months of forced separation.

*Id.* ¶ 4.

The complaint then lays out these unlawful acts in more detail. First, at the time of Plaintiffs' initial apprehension, an immigration officer told S.M.F. that she would be separated from her daughter for the crime of entering illegally unless she signed papers agreeing to be returned to the country she had just fled. *Id.* ¶ 22. Later, another officer told S.M.F., "You know what's coming. We're going to take your daughter from you." *Id.* ¶ 24. Defendant's employees then initiated S.M.F.'s criminal prosecution for illegal entry and used the legal process that followed as pretext to label A.R.M. an unaccompanied child and to separate them. *Id.* ¶¶ 34, 37 The complaint cites government reports confirming that the family separation was a specific, intentional federal policy. *Id.* ¶ 34.

Plaintiffs further allege that, *after* the summary conclusion of S.M.F.'s prosecution, Defendant's employees maintained the forced separation of S.M.F. from A.R.M., even though both remained in immigration custody. *Id.* ¶ 36–37. And Defendant's officers made the situation yet more traumatic for Plaintiffs by refusing to inform S.M.F. of her six-year-old child's location or to facilitate any communication between the two. *Id.* ¶¶ 41–42, 48–52. Further, Plaintiffs allege that Defendant's employees failed to "provide even the most basic safeguards" in tracking the placement of the separated children, which "worsened S.M.F.'s and A.R.M.'s difficulties in connecting and reuniting, even after S.M.F.'s release from immigration custody." *Id.* ¶¶ 44–45, 54–55. Plaintiffs end by asserting that these actions "unlawfully punished [them] for seeking asylum in the United States—which is statutorily obligated to adjudicate their claims for protection." *Id.* ¶ 71. As they note, such actions were taken "in callous disregard of their legal rights, personal dignity, and family integrity." *Id.* ¶ 72.

These allegations demonstrate Defendant's employees violated Plaintiffs' constitutional rights. Indeed, a district court previously addressed this constitutional question with respect to a

RESP. TO DEF'S MOT. TO DISMISS – 4
Case No. 2:22-cv-01193-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1  nationwide class of separated families, examining whether "the Government's practice of

2  separating class members from their children, and failing to reunite those parents who have been

3  separated, without a determination that the parent is unfit or presents a danger to the child

4  violate[d] the parents' substantive due process rights to family integrity under the Fifth

5  Amendment." *Ms. L. v. U.S. Immigr. & Customs Enf't.,* 310 F. Supp. 3d 1133, 1142 (S.D. Cal.

6  2018). The district court granted a nationwide injunction against such family separations and

7  ordered the reunification of previously separated families, holding that the practice likely

8  violated the Constitution. The court explained: "A practice of this sort implemented in this way

9  is likely to be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary

10  conscience,' interferes with rights 'implicit in the concept of ordered liberty[,]' and is so 'brutal

11  and offensive that it [does] not comport with traditional ideas of fair play and decency.'" *Id.* at

12  1145–46 (alterations in original) (citations omitted); *see also J.S.R. ex rel. J.S.G. v. Sessions*, 330

13  F. Supp. 3d 731, 741 (D. Conn. 2018) (noting that even the government "agree[d] that a

14  constitutional violation occurred when [it] separated children from their parents").

15       Defendant belatedly acknowledges that binding circuit case law holds that the

16  government cannot invoke the DFE where its employees' actions violate the Constitution, only

17  to assert that "Plaintiffs do not allege the violation of any constitutional provision with the

18  requisite degree of specificity required by *Gaubert*." Dkt. 12 at 17. But its cited authorities do

19  not support its position that Plaintiffs' allegations are insufficient. To the contrary, in *Nurse*, the

20  Ninth Circuit reversed a grant of dismissal on DFE grounds where the "bare allegations of the

21  complaint" alleged unconstitutional conduct but did not state the "specific constitutional

22  mandates" that were violated. 226 F.3d at 1002; *see also F.R. v. United States*, No. CV-21-

23  00339-PHX-DLR, 2022 WL 2905040, at *5 (D. Ariz. July 22, 2022) (relying in part on *Nurse*

24  when declining to require greater specificity in alleging constitutional violation). Moreover,

25  Defendant fails to acknowledge the highly detailed and specific allegations of unlawful conduct

26  in the complaint. *See supra* pp. 3–4. Notably, the *Ms. L* court and others have already found that

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

similar facts violate the due-process right to familial integrity, 310 F. Supp. 3d at 1142–46, a right that has deep historical roots in this country, *see, e.g.*, *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001).

Accordingly, *every* district court in the Ninth Circuit to have addressed this argument has agreed that the DFE does not apply to FTCA claims challenging the Trump administration's family-separation policy. *See, e.g.*, *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020) ("Because government officials lack discretion to violate the Constitution, the discretionary function exception cannot shield conduct related to the government's likely unconstitutional separation of plaintiffs."); *C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020) (citing to *Ms. L*'s finding that family separation likely violates the Constitution); *Nunez Euceda v. United States*, No. 2:20-cv-10793-VAP-GJSx, 2021 WL 4895748, at *3 (C.D. Cal. Apr. 27, 2021) ("Plaintiff has plausibly alleged that the government's Policy violated his constitutional rights."); *Fuentes-Ortega v. United States*, No. CV-22-00449-PHX-DGC, 2022 WL 16924223, at *2–3 (D. Ariz. Nov. 14, 2022) (same); *E.S.M. v. United States*, No. CV-21-00029-TUC-JAS, 2022 WL 11729644, at *4 (D. Ariz. Oct. 20, 2022) (same); *B.A.D.J. v. United States*, No. CV-21-00215-PHX-SMB, 2022 WL 11631016, at *3 (D. Ariz. Sept. 30, 2022) (same); *F.R.*, 2022 WL 2905040 at *5 (same); *A.F.P. v. United States*, No. 1:21-cv-00780-DAD-EPG, 2022 WL 2704570, at *12 (E.D. Cal. July 12, 2022) (same); *A.I.I.L. v. Sessions*, No. CV-19-00481-TUC-JCH, 2022 WL 992543, at *4 (D. Ariz. Mar. 31, 2022) (same).

Tellingly, Defendant ignores *all* of these decisions from within the Ninth Circuit and instead relies primarily on one case from Texas, *Peña Arita v. United States*, 470 F. Supp. 3d 663 (S.D. Tex. 2020), which held that the decisions to separate families were protected by the DFE. *See* Dkt. 12 at 14–16. But the *Peña Arita* court did not even address whether the exception applies to conduct alleged to violate the Constitution or other legal mandates. 470 F. Supp. 3d at 686–87. The other cases Defendant cites are also readily distinguishable, for they focus on the

RESP. TO DEF'S MOT. TO DISMISS – 6
Case No. 2:22-cv-01193-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1  decision to detain and security measures—as opposed to the decision to separate, or the failure to

2  return, a child from/to her mother. *See* Dkt. 12 at 14.

3          Defendant also presents a straw man, arguing that Plaintiffs impermissibly challenge the

4  agency's decisions to refer S.M.F. for illegal-entry prosecution and to detain Plaintiffs during the

5  pendency of their removal proceedings. Dkt. 12 at 13. "This argument, however, rests on the

6  false premise that by taking custody of children whose parents are 'amenable to prosecution,' the

7  United States is simply enforcing federal law. As previously explained, the United States was not

8  enforcing federal law when it separated Plaintiffs," but, rather, intentionally inflicting harm.

9  *C.M.*, 2020 WL 1698191, at *4. Plaintiffs do not contest the government's authority either to

10 bring a misdemeanor criminal-entry charge against S.M.F., or to exercise its authority to detain

11 Plaintiffs while placing them in removal proceedings. While Defendant has discretion with

12 respect to the choice to prosecute individuals in either criminal or removal proceedings, and has

13 discretion over custody determinations, there is no discretion to intentionally inflict severe

14 emotional and psychological damage by separating young children from their parents.

15         *Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enforcement* is instructive

16 in this respect. 319 F. Supp. 3d 491 (D.D.C. 2018). There, the plaintiff was separated from her

17 children during a brief prosecution for illegal entry, and the court concluded that the children

18 were "not true unaccompanied minors within the meaning of the [Trafficking Victims Protection

19 Reauthorization Act]." *Id.* at 495–96 & n.2. Rather, "they were rendered unaccompanied by the

20 [government's] unilateral and likely unconstitutional action[]" of forcibly separating them from

21 their mother. *Id.* at 495 n.2. Thus, the government could not designate the children

22 unaccompanied minors simply because it forcibly separated them from their mother. *Id.* at 500.

23 The court also rejected the argument that because the mother was "in lawful immigration

24 custody," she was "unavailable to provide care and physical custody." *Id.* Similarly, in *Bunikyte*

25 *v. Chertoff*, which Defendant cites, Dkt. 12 at 14, the court observed that a Congressional

26 committee had rejected the definition of "unaccompanied" that Defendant advances: "Children

RESP. TO DEF'S MOT. TO DISMISS – 7
Case No. 2:22-cv-01193-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

who are apprehended by [DHS] while in the company of their parents are not in fact

'unaccompanied' and if their welfare is not at issue, they should not be placed in ORR custody."

No. A-07-CA-164-SS, 2007 WL 1074070, *1–2 (W.D. Tex. Apr. 9, 2007) (quoting H. Rep. No.

109-79, at 38 (2005)).

Despite purporting now to disavow its prior outrageous policy, Defendant argues that the

family separation was simply the result of discretionary prosecution and detention decisions.

Dkt. 12 at 13–14. But federal policies and the facts pleaded in the complaint belie that argument.

Prior to the Zero-Tolerance Policy, children who were apprehended at or near the border were

not torn away from their parents. Indeed, the Border Patrol's Hold Rooms and Short Term

Custody Policy mandates that children *not* be separated from their parents, and instead directs

that family groups "will be detained as a unit." Maltese Decl. Ex. A at 12–13. Notwithstanding

this policy, in December 2017, the Department of Justice and DHS officials exchanged a memo

entitled "Policy Options to Respond to Border Surge of Illegal Immigration." *Id.* Ex. B. Two of

the policy options were titled: "Increased Prosecution of Family Unit Parents" and "Separate

Family Units." *Id.* Under the prosecution policy, "parents would be prosecuted for illegal

entry . . . and the minors present with them would be placed in [U.S. Department of Health and

Human Services (HHS)] custody as [unaccompanied children]." *Id.* Similarly, the separation

policy called for an announcement that adults would be placed in detention while children would

be placed in HHS custody. *Id.* Thus, the memo underscores that the family-separation policy was

a new, separate policy—not simply a natural, collateral consequence of increased criminal

prosecutions.

Indeed, as documented by several suits across the country, Defendant chose to separate

the children and label them as unaccompanied *even where no criminal charges were filed* against

the parent. *See*, *e.g.*, *Wilbur P.G. v. United States*, No. 4:21-CV-04457-KAW, 2022 WL

3024319, at *1 (N.D. Cal. May 10, 2022); *C.M.*, 2020 WL 1698191 at *3; *A.P.F.*, 492 F. Supp.

3d at 993; *B.A.D.J.*, 2022 WL 11631016 at *1. Further, "[e]ven where the parent was prosecuted,

RESP. TO DEF'S MOT. TO DISMISS – 8
Case No. 2:22-cv-01193-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

the Government kept the families separated even after the parent served a cursory sentence . . . . Parents were separated from their children for months, oftentimes without knowing anything about where their children were, and with the children thinking they would never see their parents again." *Wilbur P.G.*, 2022 WL 3024319 at *1. That is precisely what occurred in this case: "S.M.F. was sentenced to time served. Following her sentencing, S.M.F. was returned to immigration custody." Dkt. 1 ¶¶ 36–37. Yet Defendant's employees refused to return six-year-old A.R.M. to her mother. And even after DHS released S.M.F. from immigration custody, Defendant's employees failed to return her child for an additional *six weeks*. *Id.* ¶¶ 4, 48–55.

Finally, the *Flores* Agreement in no way justifies Defendant's family-separation policy, as Defendant implies. *See* Dkt. 12 at 4–5, 14. The Agreement permits parents to "affirmatively waive their children's rights to prompt release and placement in state-licensed facilities," as Defendant has conceded in other litigation. *Flores v. Sessions*, No. CV 85-4544-DMG, 2018 WL 4945000, at *4 (C.D. Cal. July 9, 2018); *see also* J. Mot. Regarding Scope of the Court's Prelim. Inj., *Ms. L.*, No. 18-cv-0428-DMS (S.D. Cal. July 13, 2018) (Dkt. 105) (agreeing that parents can waive a child's *Flores* rights in order to remain in custody together). And the *Flores* Agreement—far from mandating separation—permits family detention if it complies with the Agreement's requirements. *See Bunikyte*, 2007 WL 1074070, at *3. Indeed, the *Flores* Agreement is designed to protect the best interests of children, *Flores*, 2018 WL 4945000 at *5, and it promotes family unification, *see Bunikyte*, 2007 WL 1074070 at *16. Defendant's use of *Flores* to justify intentionally harming children thus turns *Flores* on its head. Notably, Defendant does not assert that immigration officers separated Plaintiffs because of the *Flores* Agreement.

Binding circuit precedent makes clear that the DFE does not apply where, as here, plaintiffs allege federal officers' actions violated the Constitution. Accordingly, the Court should deny Defendant's motion to dismiss on this ground.

RESP. TO DEF'S MOT. TO DISMISS – 9
Case No. 2:22-cv-01193-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

B.    Defendant's Officers Followed a Clear Policy Directive and Did Not Exercise Any Individual Discretion in Separating S.M.F. and A.R.M.

In addition, the DFE has no application here because the enforcement officers who executed Plaintiffs' separation were not exercising their own judgment. Instead, they were following the family-separation policy dictated by high-ranking officials of the Trump administration, which directed that migrant children like A.R.M. be torn away from their parents. The Supreme Court has explained that "[t]he [DFE's] requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536); *see also Sabow v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996). While recognizing *Gaubert*, *see* Dkt. 12 at 17, Defendant fails to acknowledge that the systemic, involuntary separation of thousands of children from their parents was not the product of discretionary choices made by rank-and-file DHS officers, but rather the product of a federal policy directive, *see* Dkt. 1 ¶¶ 32–35. As other courts have held, "[s]ince the family separation policy was a policy prescribed by the Trump Administration, the front-line employees tasked with implementing the policy did not reasonably have any element of choice." *Wilbur P.G.*, 2022 WL 3024319 at *4.

In sum, Defendant's family-separation policy mandated its employees to engage in unconstitutional conduct, without conferring any discretion to deviate from the policy. Accordingly, the DFE does not apply.

C.    The DFE Does Not Bar Plaintiffs' Conditions-Related Allegations.

Defendant also challenges Plaintiffs' allegations regarding the conditions they experienced while in DHS custody. But here too, the DFE does not apply.[1]

S.M.F. and A.R.M. allege that they were initially "forced to sleep on a freezing cement floor with only a single aluminum blanket, and with all the lights kept on," and that the mothers

---

[1]    Defendant's motion refers generally to the "conditions of confinement" that Plaintiffs allege, but cites only ¶¶ 39–47 of the complaint. Dkt. 12 at 16.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

had to huddle together to keep the children warm. Dkt. 1 ¶ 19. These conditions exacerbated

A.R.M.'s asthma, resulting in severe coughing and rashes. *Id.* ¶ 20. Customs and Border

Protection (CBP) agents also provided only small burritos and bottled water to sustain Plaintiffs

during the days they spent in the facility, and denied requests for additional food. *Id.* ¶ 21. Later,

after her separation from A.R.M., S.M.F. was again forced to sleep in freezing temperatures

without a blanket. *Id.* ¶ 39. Defendant's employees also failed to adequately document Plaintiffs'

separation, preventing Plaintiffs from receiving any opportunity to contact each other during the

months of their detention. *Id.* ¶¶ 41, 45–46, 48. This caused Plaintiffs extreme emotional distress,

making S.M.F. "so desperate that she felt that she did not want to live any more," and inflicting

long-lasting, wrenching harm on both mother and daughter. *Id.* ¶¶ 42, 64–68, 74–75.

       The DFE does not apply to these allegations. As an initial matter, this Court should

"reject[] the United States' re-categorization of Plaintiffs' factual allegations as standalone

claims," as other courts considering family-separation FTCA cases have done. *A.P.F.*, 492 F.

Supp. 3d at 996. Instead, "[a]llegations related to conditions of confinement . . . are factual

allegations primarily aimed at demonstrating the harm resulting from the separations." *Id.* at 997

This Court should hold the same, as Plaintiffs have not pleaded a standalone claim regarding the

conditions of confinement. *See id.* at 996–97; *see also A.I.I.L.*, 2022 WL 992543 at *3–4

(rejecting government's DFE argument in family-separation case for same reason); *F.R.*, 2022

WL 2905040 at *5 (same); *C.M.*, 2020 WL 1698191 at *4 (same).

       In any event, Plaintiffs' conditions-related allegations did not involve any element of

judgment or choice. Rather, federal policy "mandate[d] certain actions that [Defendant's]

employee[s] failed to follow." *Lam v. United States*, 979 F.3d 665, 674 (9th Cir. 2020). For

instance, under CBP's National Standards on Transport, Escort, Detention, and Search

(NSTEDS), CBP officers were required to "maintain hold room temperature within a reasonable

and comfortable range for both detainees and officers." Maltese Decl. Ex. C at 16. The *Flores*

Agreement, which applies to all minors in CBP custody, similarly requires CBP to ensure

RESP. TO DEF'S MOT. TO DISMISS – 11
Case No. 2:22-cv-01193-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1   "adequate temperature control" in its facilities. *Id.* Ex. D at 7. The Border Patrol's Hold Room

2   Policy echoes this requirement. *Id.* Ex. A at 11, 13.

3          As for bedding, the NSTEDS mandates that juveniles receive bedding and hot meals, and

4   that adults "be provided" a blanket. *Id.* Ex. C at 17, 22. The Hold Room Policy imposes similar

5   requirements, and further specifies that "[j]uveniles detained longer than 24 hours will be given

6   access to . . . a blanket and a mattress." *Id.* Ex. A at 8, 11. And for S.M.F., the 2011

7   Performance-Based National Detention Standards (PBNDS) required that she receive at least

8   "one mattress, one blanket and one pillow" while in ICE detention. *Id.* Ex. E at 330.

9          Defendant's employees also had duties to maintain adequate records. The NSTEDS

10  specifies that family "separation[s] must be documented in the appropriate electronic system(s)

11  of record." *Id.* Ex. C at 22. The Hold Room Policy required CBP to keep track of various

12  information regarding any youth deemed unaccompanied and to carefully document any custody

13  transfers. *Id.* Ex. A at 12. And the *Flores* Agreement requires the government to provide minors

14  with "contact with family members who were arrested with the minor." *Id.* Ex. D at 7–8.

15  Similarly, ICE's PBNDS states that "facility staff shall make special arrangements to permit the

16  detainee to speak by telephone with an immediate family member detained in another facility."

17  *Id.* Ex. E at 390.

18         Here, Plaintiffs allege unambiguous violations of these requirements, none of which

19  Defendant's employees had any discretionary authority to disregard. And to the extent that their

20  actions violated Plaintiffs' constitutional rights (e.g., by preventing Plaintiffs from

21  communicating with each other for months), Defendant's employees "d[id] not have discretion

22  to violate the Constitution." *Nieves Martinez v. United States*, 997 F.3d 867, 877 (9th Cir. 2021).

23         Moreover, these violations of federal standards governing immigration detention are not

24  subject to "public policy analysis," as they do not involve "decisions grounded in social,

25  economic, or political policy." *Bailey v. United States*, 623 F.3d 855, 861 (9th Cir. 2010)

26  (quoting *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008)). Plaintiffs' allegations

RESP. TO DEF'S MOT. TO DISMISS – 12
Case No. 2:22-cv-01193-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1   derive not only from Defendant's employees' failure to follow their own policies, but also from

2   those employees' failure to accord Plaintiffs basic dignity.

3          Notably, at least one other court faced with allegations of similar violations of

4   immigration-detention policies has held that the DFE did not apply for both of these reasons. In

5   *Ruiz ex. rel. E.R. v. United States*, the plaintiff alleged that CBP officers had "violated the *Flores*

6   [Agreement] . . . as well as [CBP's] own internal policies" regarding the meals and bedding a

7   youth received. No. 13-CV-1241, 2014 WL 4662241, at *6 (E.D.N.Y. Sept. 18, 2014). Relying

8   on "the explicit policies and procedures of the *Flores* Agreement and the CBP's internal

9   policies," the court rejected Defendant's claim that the DFE applied. *Id.* at *8. In addition, the

10  court held that, "even if the binding guidance . . . did not apply," the allegations were not

11  "susceptible to policy analysis." *Id.* at *9. The court stressed that it could not "discern how

12  deciding to wait fourteen hours before contacting E.R.'s parents and to only provide the child

13  with a cookie and a soda over twenty hours could constitute a considered judgment grounded in

14  social, economic, or political policies." *Id.* "Rather, based on plaintiff's allegations, the CBP

15  Officers' actions appear more plausibly to be the result of negligence or laziness, and these acts

16  do not warrant the application of the [DFE]." *Id.*; *see also Scott v. Quay*, No. 19-CV-1075, 2020

17  WL 8611292, at *13–14 (E.D.N.Y. Nov. 16, 2020) (noting that an official's "laziness,

18  carelessness, or inattentiveness" in carrying out discretionary duties are negligent acts not

19  grounded in policy considerations).

20         The out-of-circuit cases cited in Defendant's motion are distinguishable. In those cases,

21  the plaintiffs did not identify any policies that mandated certain actions. Nor did the cases

22  involve allegations that federal employees denied individuals their most basic dignity. In fact,

23  some of Defendant's own cases even refute its position. For example, in *Bultema v. United*

24  *States*, the court held that the DFE did *not* apply because the prison's policy "dictated the[]

25  actions" of prison employees. 359 F.3d 379, 385 (6th Cir. 2004). The other cases Defendant cites

26

RESP. TO DEF'S MOT. TO DISMISS – 13
Case No. 2:22-cv-01193-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

are distinguishable on the same basis or simply irrelevant. *See* Dkt. 12 at 16–17 (citing cases). In sum, the DFE does not apply to these allegations.

**II.     The Due-Care Exception Does Not Bar Plaintiffs' Family-Separation Claims.**

Defendant's forced separation of Plaintiffs was neither mandated by statute or regulation, nor executed with due care. Accordingly, the due-care exception to the FTCA's waiver of sovereign immunity, which insulates from suit the actions of federal employees "exercising due care, in the execution of a statute or regulation," does not apply here. 28 U.S.C. § 2680(a).

Courts in this circuit "apply the two-prong test established by the decision in *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005) in determining whether the due care exception applies." *A.F.P.*, 2022 WL 2704570, at *14 (citing cases). Under the *Welch* test, this exception applies only if: (1) "a specific action is *mandated*" by "the statute or regulation in question"; and (2) "the officer exercised due care in following the dictates of that statute or regulation." *Welch*, 409 F.3d at 652 (emphasis added). Here, Defendant fails at both steps.

First, the due-care exception is not applicable because Defendant's employees separated Plaintiffs pursuant to an executive *policy*. Dkt. 1 ¶¶ 32–38. "Actions taken pursuant to executive policy are not shielded by the due care exception" as they are not taken "pursuant to any statute or regulation." *A.P.F.*, 492 F. Supp. 3d at 996. To avoid this conclusion, Defendant asserts that the separation was instead "required" by the TVPRA once its employees decided "to prosecute S.M.F. and to detain her in a secure immigration detention facility separate from" her six-year-old daughter. Dkt. 12 at 18. It further asserts that the TVPRA then "required the separation of children from adults . . . while the adults were in immigration  detention." *Id.*

This argument flips the TVPRA on its head, using a statute designed to *protect* children to justify *harming* them. The TVPRA requires only the transfer of *unaccompanied* minors, 8 U.S.C. § 1232(b)(3)—that is, a child without a parent or guardian "available to provide care and physical custody," 6 U.S.C. § 279(g)(2)(C)(ii). In this case, A.R.M. was "not [a] true unaccompanied minor[] within the meaning of the statute; [she was] rendered unaccompanied by

RESP. TO DEF'S MOT. TO DISMISS – 14
Case No. 2:22-cv-01193-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1    the unilateral and likely unconstitutional actions of [D]efendant[]." *Jacinto-Castanon*, 319 F.

2    Supp. 3d at 495 n.2. The TVPRA simply does not apply to cases such as this one, where a family

3    enters the U.S. and is initially detained together—even where the parent is subject to brief

4    separation for an illegal-entry prosecution. *See id.* at 500–01 & n.3. In many instances, parents

5    subjected to the family-separation policy were not even removed from the immigration-detention

6    facility pending their misdemeanor proceedings. *See, e.g.*, *A.F.P.*, 2022 WL 2704570 at *1.

7    Moreover, S.M.F., like most other parents subjected to family separation, was simply sentenced

8    to time served. The TVPRA thus did not "require" Plaintiffs' indefinite separation simply

9    because of S.M.F.'s prosecution. *See id.* at *15 ("[T]he conduct must be *required*, not merely

10   authorized" for the exception to apply); *Wilbur P.G.*, 2022 WL 3024319 at *5 (finding

11   separations were made pursuant to executive policy, not the TVPRA); *A.E.S.E. v. United States*,

12   No. 21-CV-0569 RB-GBW, 2022 WL 4289930, at *13–14 (D.N.M. Sept. 16, 2022) (same).

13   Accordingly, Defendant is wrong to assert that the TVPRA requires such actions. If anything, the

14   TVPRA underscores how illegal those actions were, as even "unaccompanied" children were

15   supposed to be placed in the "least restrictive setting that is in the best interest of the child"—

16   which would undoubtedly be *with their parent* in most cases.

17          Second, Defendant also fails to satisfy *Welch* because its employees did not implement

18   the separation with "due care." "'Due care' implies at least some minimal concern for the rights

19   of others." *Hatahley v. United States*, 351 U.S. 173, 181 (1956). Despite bearing the burden of

20   proving the exception applies, *Prescott*, 973 F.2d at 702, Defendant has not argued its employees

21   acted with the requisite care, *see* Dkt. 12 at 17–18. Nor can it: the family-separation policy was

22   cruel and inhumane by design, Dkt. 1 ¶¶ 1–5, 34–35, 45–46, and it was executed in that manner

23   in S.M.F. and A.R.M.'s case. S.M.F. was initially pressured to give up her asylum claim by

24   Defendant's employees, *id.* ¶ 22; Defendant's employees then separated S.M.F. and A.R.M. and

25   did not even inform S.M.F. where her daughter was being taken or whether she would ever be

26   able to see her again, *id.* ¶¶ 24–26. Defendant's employees subsequently "refused to facilitate" or

RESP. TO DEF'S MOT. TO DISMISS – 15
Case No. 2:22-cv-01193-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1   to allow any meaningful communication between the two, both during and after S.M.F.'s time in

2   detention. *Id.* ¶¶ 41, 48, 50. Other courts have found Defendant to have failed to exercise due

3   care in similar circumstances. *See, e.g.*, *A.E.S.E.*, 2022 WL 4289930 at *13–14 (separation was

4   carried out "in a manner designed to provoke emotional distress"). The due-care exception

5   therefore does not shield Defendant from suit here.

6   **III.   Private-person Analogues for Plaintiffs' Claims Exist under Texas law.**

7          The FTCA makes Defendant liable only "in the same manner and to the same extent as a

8   private individual under like circumstances." 28 U.S.C. § 2674. Defendant argues no private-

9   person analogue exists to support an FTCA claim here because "only the federal government has

10  the authority to enforce federal criminal and immigration laws and make detention

11  determinations." Dkt. 12 at 19. The Supreme Court, however, has rejected similar arguments

12  that § 2674 should be read "as excluding liability in the performance of activities which private

13  persons do not perform." *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955). To require

14  otherwise "would give the federal government absolute immunity to violate the rights of those

15  for whom it has sole decision-making authority." *Wilbur P.G.*, 2022 WL 3024319 at *5. Indeed,

16  FTCA claims are regularly brought against immigration authorities for tortious actions

17  committed while performing enforcement functions that private persons are not authorized to

18  perform. *See, e.g.*, *Arce v. United States*, 899 F.3d 796, 798, 801 (9th Cir. 2018) (finding

19  jurisdiction for FTCA claim against federal government for unlawful removal); *Vargas Ramirez*

20  *v. United States*, 93 F. Supp. 3d 1207, 1227–29 (W.D. Wash. 2015) (federal government liable

21  under FTCA for false arrest).

22         Looking to the tort claims recognized by the law of the state where the challenged

23  conduct occurred, courts are guided by the "most reasonable analogy" for that conduct in

24  determining whether a private-person analogue exists. *A.F.P.*, 2022 WL 2704570 at *9 (quoting

25  *Dugard v. United States*, 835 F.3d 915, 919 (9th Cir. 2016)). The analogue "need only exist

26

RESP. TO DEF'S MOT. TO DISMISS – 16
Case No. 2:22-cv-01193-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1  under 'like circumstances,' not 'under the same circumstances.'" *Id.* (quoting *Indian Towing*,

2  350 U.S. at 64). Here, all of Plaintiffs' claims have a private-person analogue in Texas.

3  In analyzing the IIED cause of action under Texas law, at least two courts have held in

4  family-separation cases that a private-person analogue exists. The *A.F.P.* court relied on

5  *M.D.C.G. v. United States*, No. 7:15-cv-00552, 2016 WL 6638845, at *11–12 (S.D. Tex. Sept.

6  13, 2016), which permitted an IIED claim to proceed based on allegations of trauma caused by

7  the immigration authorities' separation of two minors from their families. 2022 WL 2704570 at

8  *10. Plaintiffs allege a similar claim here. Dkt. 1 ¶¶ 82–86. And in *A.E.S.E.*, the court

9  acknowledged that Texas courts have allowed IIED claims based on the separation of children

10  from their parents. 2022 WL 4289930 at *14 (citing *Eberle v. Adams*, 73 S.W.3d 322, 336–37

11  (Tex. App. 2001) (IIED) and *Silcott v. Oglesby*, 721 S.W.2d 290 (Tex. 1986) (recognizing

12  damages for "mental anguish" in child's abduction)); *see also In re J.G.W.*, 54 S.W.3d 826, 829,

13  833 (Tex. App. 2001) (IIED claim arising from child abduction was not barred by res judicata).

14  The *A.F.P.* court also recognized Texas cases contemplating abuse-of-process claims

15  against private parties and a government employee for "engag[ing] in 'the malicious use or

16  misapplication of process in order to accomplish an ulterior purpose.'" 2022 WL 2704570, at

17  *10 (quoting *Hunt v. Baldwin*, 68 S.W.3d 117, 129 (Tex. App. 2001)). It then concluded a

18  private-person analogue existed because, like in this case, "plaintiffs have alleged that defendant

19  maliciously used plaintiff [parent's] prosecution for illegal entry as a pretext for separating him

20  from his minor [child] in pursuit of an ulterior purpose of deterring other asylum seekers from

21  entering the United States." *Id.*; *see also* Dkt. 1 ¶¶ 87–92, 34, 37.

22  As to Plaintiffs' negligence claim, the *A.F.P.* court's analysis is again instructive.

23  Concluding a private analogue existed for the negligence claims in that case, the court reasoned

24  that "[f]ederal immigration officials, like employees at a private facility for the mentally

25  impaired tasked with the care and custody of facility residents, also have a 'special relationship'

26  with detainees in that they 'are tasked with the care and custody of those they detain, and owe

RESP. TO DEF'S MOT. TO DISMISS – 17
Case No. 2:22-cv-01193-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

detainees at least a minimal level of care.'" *A.F.P.*, 2022 WL 2704570 at *10 (citation omitted). Here, Defendant's employees owed S.M.F. and A.R.M. a similar minimal level of care, which they failed to exercise by, inter alia, refusing to give S.M.F. any information about the whereabouts of her six-year-old daughter. *See* Section IV, *infra*. A private-person analogue for Defendant's employees' behavior while A.R.M. was in ORR custody thus exists.

Finally, the Texas Supreme Court has held that a cause of action for child abduction exists where a grandfather deprived a father of lawful custody of his child by obtaining brief temporary custody of the child and then kidnapping him. *Silcott*, 721 S.W.2d at 291, 293. Plaintiffs here allege "like" enough circumstances to find a private-person analogue exists: Defendant's employees caused a brief interruption in S.M.F.'s lawful custody of A.R.M. to obtain custody of the child, and then refused to return her to her mother even after the original, temporary basis for the separation had concluded. Dkt. 1 ¶¶ 93–99.

The cases Defendant relies on concern the adjudication of immigration benefits, a circumstance that is not "reasonably analogous" to what happened here. *See Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) (denial of "immigration status adjustment application"); *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) (withdrawal of immigration benefits). Defendant's arguments are thus unavailing, for Texas law recognizes the viability of each of Plaintiffs' claims against private individuals in like circumstances.

## IV.   Plaintiffs Have Stated a Negligence Claim as to A.R.M.'s Time in ORR Custody.

The Court should also reject Defendant's invitation to dismiss Plaintiffs' claim regarding the harm that its employees inflicted by designating A.R.M. as an unaccompanied minor and placing her in a shelter.

Contrary to Defendant's argument, Count IV does not implicate the independent-contractor exception to FTCA liability. *See* Dkt. 12 at 20–22. Plaintiffs have pleaded facts that, taken together, show that *Defendant's employees*—not the contractor—caused the harm A.R.M. suffered. After all, it was *Defendant's employees* that separated Plaintiffs in the first instance

RESP. TO DEF'S MOT. TO DISMISS – 18
Case No. 2:22-cv-01193-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1   based on pretense. Dkt. 1 ¶¶ 24, 36–37. It was *Defendant's employees* that failed to facilitate

2   communication between S.M.F. and A.R.M. to ensure proper consent or disclosure of

3   information regarding A.R.M.'s healthcare. *Id.* ¶¶ 41, 48–50, 60–61. And it was also *Defendant's*

4   *employees* who caused A.R.M. the unimaginable emotional trauma of being separated from her

5   mother, which made her "thin and unwell" and "reserved and distant" while in the shelter's

6   custody. *Id.* ¶ 53. Similarly, it was *Defendant's employees* who did not "flag[] A.R.M.'s prior

7   diagnosis of and treatment for asthma" for Cayuga Centers, *id.* ¶ 60, despite being well aware of

8   it, *id.* ¶¶ 18, 20, 61. Finally, *Defendant's employees* carried on the pretense of designating

9   A.R.M. as "unaccompanied" for weeks after S.M.F. was released from federal criminal custody,

10  *see, e.g.*, *id.* ¶¶ 36–38, 55, even though they were statutorily responsible for the decision

11  regarding where to place A.R.M., *see* 6 U.S.C. § 279(b)(1)(C).

12      For these reasons, Defendant's citations to case law regarding the "independent

13  contractor exception" are irrelevant here. *See* Dkt. 12 at 20–22. As the Ninth Circuit has

14  explained, "[t]he independent contractor exception . . . has no bearing on the United States'

15  FTCA liability for *its own* acts or omissions." *Edison v. United States*, 822 F.3d 510, 518 (9th

16  Cir. 2016) (emphasis added). Here, Plaintiffs are not seeking to hold Defendant accountable for

17  the actions of an ORR contractor; rather, they are seeking to hold Defendant accountable for its

18  employees' actions in failing to (1) reunite Plaintiffs in a timely fashion, (2) facilitate

19  communication between them, and (3) provide the shelter with basic information about A.R.M.'s

20  health status in Defendant's employees' possession. In doing so, Defendant's employees ignored

21  their own policies and duties. *See supra* p. 12. They also failed to ensure that A.R.M. would

22  receive the care and medical authorization from her mother she should have received.

23  Moreover, all of the allegations addressing the harms A.R.M. experienced while in the custody

24  of Defendant's contractor agency are relevant to demonstrating damages for other claims. The

25  harms *six-year-old* A.R.M. suffered while separated from her mother are the direct and

26  foreseeable result of Defendant's employees' decision to separate them. To that end, Plaintiffs

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1  have incorporated all of the allegations in their complaint into each cause of action, including the

2  causes of action related to family separation. *See, e.g.*, Dkt. 1 ¶ 82; *see also C.M.*, 2020 WL

3  1698191 at *4 ("To the extent the United States asks the Court to parse the Complaint to assess

4  whether claims with respect to individual factual allegations are barred, the Court declines to do

5  so. Such an approach is inconsistent with the Complaint, which incorporates all facts into each

6  count."). Indeed, just as with the detention-conditions issue discussed above, Plaintiffs'

7  allegations are "primarily aimed at demonstrating the harm resulting from the separations."

8  *A.P.F.*, 492 F. Supp. 3d at 996–97; *see also supra* p. 11 (citing cases).

9  **V.    Plaintiffs Have Stated an Abuse-of-Process Claim.**

10        Defendant also moves to dismiss Plaintiffs' abuse-of-process claim, citing this Court's

11  decision in *E.L.A. & O.L.C. v. United States*, No. 2:20-cv-01524-RAJ (W.D. Wash) (Dkts. 36 &

12  40). There, this Court held that a separated father and son could not state an abuse-of-process

13  claim under Texas law because the parent's federal prosecution was "used for the purpose for

14  which it [was] intended, even though accompanied by an ulterior motive." *E.L.A.*, Dkt. 40 at 3

15  (quoting *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 378-79 (Tex. App. 1989)).

16  Plaintiffs respectfully disagree with this rationale. Under Texas law, Plaintiffs need only show

17  that *one part* of the process was misused. They respectfully submit that they have made such a

18  showing by alleging that Defendant's employees misused the transfer (or even the prospect of it)

19  from DHS custody to federal criminal custody, however brief, to designate a child as

20  "unaccompanied."

21        According to the *E.L.A.* decisions, Plaintiffs cannot state a claim where they "concede[]

22  that the illegal entry prosecution was lawfully instituted against [them]." *E.L.A.*, Dkt. 40 at 3. But

23  in Texas, a plaintiff does not have to allege that the *entire* case was unlawful (that would be a

24  malicious-prosecution claim), but only that the *particular* "process" employed against them was

25  used improperly. After all, "[t]he term 'process' is defined as '[a] summons or writ, esp. to

26  appear or respond in court.'" *Pisharodi v. Watts Law Firm, L.L.P.*, No. 13-07-665-CV, 2008 WL

3522119, at *2 (Tex. App. Aug. 14, 2008) (citation omitted); *see also Gonzalez v. United States*,
No. EP-14-CV-263-PRM-RFC, 2015 WL 13344910, at *7 (W.D. Tex. Aug. 12, 2015) (similar),
*report and recommendation adopted*, No. EP-14-CV-263-PRM, 2015 WL 13345624 (W.D. Tex.
Sept. 14, 2015), *aff'd*, 681 F. App'x 310 (5th Cir. 2017). "Process," then, does not refer to the
case as a whole, but only to particular actions taken after the case was commenced. *See*
*Blackstock v. Tatum*, 396 S.W.2d 463, 468 (Tex. Civ. App. 1965) ("The process referred to in the
cases is not in the filing and maintenance of a civil action, but in the wrongful use of a writ
issued in the suit."); *see also id.* (explaining that claims alleging that the "mere filing and
maintenance of civil suits" for improper purposes were claims of malicious prosecution);
*Rodriguez v. Carroll*, 510 F. Supp. 547, 553 (S.D. Tex. 1981) (rejecting abuse-of-process claim
because plaintiff failed to allege an "overt act" that was not "incidental to the lawsuit,"
concluding that plaintiff's claim was instead for "malicious prosecution"). "In other words, the
tort assumes that the original issuance of a legal process was justified, but the process itself is
subsequently used for a purpose for which it was not intended." *Moore v. Bushman*, 559 S.W.3d
645, 653 (Tex. App. 2018).

Accordingly, under Texas law, the fact that plaintiffs acknowledged the "illegal entry
prosecution was lawfully instituted" should not be determinative. Instead, "[t]he purpose for
which the process issued, once it is issued, is the only thing of importance." *Blackstock*, 396
S.W.2d at 468 (citation omitted). Here, the particular use of process that Plaintiffs allege to be
unlawful is Defendant's use of a transfer of a parent to federal criminal custody to automatically
designate her child as unaccompanied. Dkt. 1 ¶ 37. Notably, that transfer did not have to be long,
*nor did it even need to happen*. Indeed, many parents separated from their children remained in
immigration custody both before and after their brief appearance in federal court for their illegal-
entry prosecution. *See, e.g.*, *A.F.P.*, 2022 WL 2704970 at *1. And virtually all parents—
including S.M.F.—were sentenced only to time served. Under these circumstances, the
unaccompanied-child designation was a "collateral and unlawful objective," *Rodriguez*, 510 F.

RESP. TO DEF'S MOT. TO DISMISS – 21
Case No. 2:22-cv-01193-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1    Supp. at 553, that was "not the proper subject of the proceeding itself," *Andrade v. Chojnacki*, 65

2    F. Supp. 2d 431, 469 (W.D. Tex. 1999). Nothing about the criminal prosecutions warranted

3    concluding that A.R.M. or other children had "no parent or legal guardian in the United States . .

4    . available to provide care and physical custody." 6 U.S.C. § 279(g)(2)(C)(ii). The parents simply

5    could have remained in immigration custody with their children, received their sentences of

6    time-served at the criminal proceeding, and returned to immigration custody with their children.

7    And even for the parents who were actually held in criminal custody for a short time, no court

8    declared that they had lost legal and physical custody of their children, and the parents were

9    quickly returned to immigration custody. Plaintiffs accordingly seek to make clear that what

10   Defendant's employees did was not a proper use of process.

11        For these reasons, Plaintiffs have stated an abuse-of-process claim. Plaintiffs recognize

12   that this Court views Texas case law differently, and have reiterated these arguments to preserve

13   this issue for appeal, if necessary.

14   **VI.    Plaintiffs Have Stated a Claim for the Common-Law Tort of Child Abduction.**

15        Finally, the Court should not dismiss Plaintiffs' child-abduction claim, as they have

16   alleged facts sufficient to support a plausible claim for relief under Texas common law. Texas

17   courts have recognized that a parent has "a tort cause of action when someone entices away or

18   harbors [their] minor child." *Silcott*, 721 S.W.2d at 292 (citing *Gulf C. & S.F. Ry. Co. v. Redeker*,

19   2 S.W. 527, 528 (Tex. 1886)). In defining this common-law tort, the Texas Supreme Court

20   explicitly adopted section 700 of the Second Restatement of Torts, which states: "One who, with

21   knowledge that the parent does not consent, abducts or otherwise compels or induces a

22   minor child to leave a parent legally entitled to its custody or not to return to the parent after it

23   has been left him, is subject to liability to the parent." *Id.* at 292–93 (quoting Restatement

24   (Second) of Torts § 700 (1977)); *see also Weirich v. Weirich*, 796 S.W.2d 513, 515–16 (Tex.

25   App. 1990), *rev'd on other grounds*, 833 S.W.2d 942 (Tex. 1992) (noting that the "common law

26   cause of action for the tort of child abduction" in Texas is based on the Second Restatement of

RESP. TO DEF'S MOT. TO DISMISS – 22
Case No. 2:22-cv-01193-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1   Torts § 700, and using it to determine the scope of the tort); *Smith v. Smith*, 720 S.W.2d 586, 600

2   (Tex. App. 1986) (holding that the trial court did not err in "including portions of sec. 700 of the

3   Restatement 2d of Torts in its instructions to the jury" in a child-abduction case).

4       While the Texas Legislature later codified a type of child abduction tort and provided for

5   statutory damages, *see* Tex. Fam. Code § 42.002, Texas courts have held that the statute did not

6   abrogate or supersede the common-law cause of action, *see, e.g.*, *Weirich*, 796 S.W.2d at 515 &

7   n.3 (discussing predecessor statute found at Tex. Fam. Code Ann. § 36); *Smith*, 720 S.W.2d at

8   600 (similar). In holding so, courts have pointed to Tex. Fam. Code § 36.06 of the statute (now §

9   42.008), which "expressly permits any other available civil remedy." *Weirich*, 796 S.W.2d at 515

10  n.3; *see also, e.g.*, *Smith*, 720 S.W.2d at 600. Thus, under Texas law, a parent whose child was

11  wrongfully taken away from them has a cause of action under both the statute and common law.

12      Importantly, while the statutory cause of action is available only where one violates "a

13  court-ordered right of possession of or access to a child, including conservatorship, custody, and

14  visitation," Tex. Fam. Code § 42.001(2), the common-law tort is not so limited. Texas's

15  common-law cause of action is available *whenever* "someone entices away or harbors [a] minor

16  child" from their parent(s) without consent. *Silcott*, 721 S.W.2d at 292. Indeed, *Gulf C. & S.F.*

17  *Ry. Co. v. Redeker*—cited by the Texas Supreme Court in *Silcott* as a foundational child-

18  abduction case—did not involve any violation of a court order. *Id.* (citing 2 S.W. at 527–28).

19      Nor does the Second Restatement of Torts § 700, on which the Texas common-law tort is

20  based, require such a violation as an element. *See* Restatement (Second) of Torts § 700. Section

21  700 "reflects the [general] common law principle that 'parents have a right to the care, custody,

22  services and companionship of their minor children, and [that] when they are wrongfully

23  deprived thereof by another, they have an action therefor.'" *Anonymous v. Anonymous*, 672 So.

24  2d 787, 789 (Ala. 1995) (citation omitted). As its plain language makes clear, § 700 provides a

25  cause of action wherever a defendant tortiously interferes with this fundamental parental right,

26  regardless of whether that conduct also violates any court order. *See, e.g.*, *id.*; *Murphy v. I.S.K.*

1  *Con. of New England, Inc.*, 571 N.E. 2d 340, 351–52 (Mass. 1991); *Surina v. Lucey*, 214 Cal.

2  Rptr. 509, 511–13 (Cal. Ct. App. 1985). For these reasons, Defendant's argument that the

3  common-law tort of child abduction is limited to cases "where custody or other court orders were

4  violated" is incorrect. Dkt. 12 at 24.

5        Here, Plaintiffs have alleged sufficient facts to state a plausible claim of tortious child

6  abduction under Texas common law. Defendant's employees told S.M.F. that "she would be

7  separated from her daughter for the crime of having the entered the country illegally," to which

8  S.M.F. responded that "she d[id] not want to be separated from her daughter." Dkt. 1 ¶ 22.

9  Defendant's employees then forcibly took A.R.M. away from S.M.F. and transferred her to a

10  facility across the country. *See id.* ¶¶ 24–28. Plaintiffs remained separated for over two months,

11  not knowing each other's whereabouts or whether they would ever be reunited. *See id.* ¶¶ 27–28,

12  41–43, 72, 97. These and other pleaded facts establish that Defendant's employees, "with

13  knowledge that [S.M.F.] d[id] not consent, abduct[ed] or otherwise compel[led] or induce[d]"

14  her minor daughter A.R.M. "to leave" her. Restatement (Second) of Torts § 700. Notably, in

15  *Redeker*, the Texas Supreme Court indicated a defendant could be liable for merely hiring a

16  minor without parental consent if the minor were to become injured on the job. 2 S.W. at 527–

17  28. Surely then, it is *at least* plausible that Defendant could be held liable for ripping a six-year-

18  old child from her mother's arms and separating them for months for the very purpose of

19  inflicting extreme emotional harm on them. *See Silcott*, 721 S.W. 2d at 292 ("The mental

20  anguish experienced by parents . . . can be extremely intense. The child may remain missing for

21  a long period of time with the parent's worry, uncertainty, and fear increasing daily.").

22  **CONCLUSION**

23        For all these reasons, the Court should deny Defendant's motion to dismiss.

24

25

26

RESP. TO DEF'S MOT. TO DISMISS – 24
Case No. 2:22-cv-01193-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Dated this 28th day of November, 2022

s/ Matt Adams
Matt Adams
matt@nwirp.org

s/ Aaron Korthuis
Aaron Korthuis
aaron@nwirp.org

s/ Glenda Aldana Madrid
Glenda Aldana Madrid
glenda@nwirp.org

s/ Michael Ki Hoon Hur
Michael Ki Hoon Hur
michael@nwirp.org

**NORTHWEST IMMIGRANT RIGHTS PROJECT**
615 Second Avenue, Suite 400
Seattle, Washington 98104
Tel: (206) 957-8611
Fax: (206) 587-4025

RESP. TO DEF'S MOT. TO DISMISS – 25
Case No. 2:22-cv-01193-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.

DATED this 28th day of November, 2022.

s/ Aaron Korthuis
Aaron Korthuis
Northwest Immigrant Rights Project
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 816-3872
(206) 587-4025 (fax)

RESP. TO DEF'S MOT. TO DISMISS – 26
Case No. 2:22-cv-01193-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611