THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| S.M.F. and A.R.M., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA <br><br> Defendant. | Case No. 2:22-cv-01193-RAJ <br><br><br> **ORDER** |

## I. INTRODUCTION

This matter comes before the Court on Defendant United States's ("Government" or "Defendant") Motion to Dismiss. Dkt. # 12. Plaintiffs S.M.F. and A.R.M. ("Plaintiffs") oppose the motion, Dkt. # 17, Defendant filed a reply, Dkt # 19, and Plaintiff submitted a surreply. Dkt. # 21. Additionally, both parties submitted, and the court reviewed, notices of supplemental authority. Dkt. ## 23, 24, 25. The Court finds that oral argument is unnecessary to resolve this motion. LCR 7(b)(4). Having reviewed the motion, record, and relevant law, the Court **GRANTS in part** and **DENIES in part**

ORDER – 1

Defendant's motion to dismiss.

## II. BACKGROUND

Plaintiffs S.M.F. ("SMF") and her daughter A.R.M. ("ARM") are citizens of Honduras who reside in Seattle, Washington.[1] Dkt. # 1 ¶¶ 13, 14 (Complaint). Plaintiffs allege that they "fled persecution and torture in Honduras and sought refuge in the United States." *Id*. On or about May 10, 2018, Plaintiffs entered the United States near El Paso, Texas. *Id*. ¶ 17. ARM was six years old at the time. *Id*. ¶ 14. Plaintiffs were questioned and arrested by U.S. Customs and Border Protection ("CBP") shortly after they crossed the border. *Id*. ¶ 20. Immigration officers took Plaintiffs and the other people with whom they were traveling to a nearby CBP detention facility. *Id*. ¶ 17. At the facility, known as the "*hielera*" or "ice box," due to its cold temperatures, a female officer told SMF to remove all of her clothing except her underwear and then searched SMF's body. *Id*. ¶ 18. The officer confiscated SMF's belongings, including ARM's asthma inhaler. *Id*. Plaintiffs were detained in the *hielera* for two nights with other mothers and children who crowded together to keep the children warm. *Id*. ¶ 19. Plaintiffs allege that the cold temperatures exacerbated ARM's asthma symptoms, so SMF asked officers for ARM's inhaler. *Id*. ¶ 20. While officers provided the inhaler, they provided no further medical assistance. *Id*. On the morning of May 13, 2018, ARM was separated from SMF by a woman who was introduced to SMF as a "social worker." *Id*. ¶ 25-26. On that same day, SMF was transported to a new detention facility. *Id*. ¶ 28.

SMF was prosecuted for her illegal entry into the United States under 8 U.S.C. § 1325 pursuant to the United States' "Zero Tolerance" policy, announced by former Attorney General Jeff Sessions. *Id*. ¶¶ 29-30, 32. SMF was held in federal criminal custody until May 30, 2018, when she pleaded guilty, was sentenced to time served, and returned to immigration custody. *Id*. ¶ 31. SMF remained in custody for approximately

---

[1] The Court assumes the truth of the complaint's factual allegations for purposes of the motion to dismiss. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

ORDER – 2

one more month, sleeping in another *hielera* on a thin mat with no blankets. *Id.* ¶ 39. During this period of detention, SMF asked officers about ARM's location and wellbeing. *Id.* ¶ 41. However, officers consistently told SMF that they could not provide information about ARM's whereabouts or when SMF would see her again. *Id.*

As a result of SMF's prosecution, ARM was designated an "unaccompanied minor." *Id.* ¶ 37. As an unaccompanied minor, ARM was placed in the custody of the Office of Refugee Resettlement ("ORR"), the agency legally responsible for her care and safety. *Id*. ¶ 38, 59. After being separated from SMF, ARM was taken to another facility in Texas where she was placed in a cell with five other girls. *Id.* ¶ 56. Within a few days, ARM was taken to a shelter in New York run by Cayuga Centers, a non-profit that contracts with ORR to provide services to unaccompanied minors. *Id.* ¶ 57. Because ARM was an unaccompanied minor, ORR remained responsible for ARM's care and safety after her placement at Cayuga Centers. *Id*. ¶ 59.

On June 8, 2018, SMF was released from detention. *Id.* ¶ 48. She then traveled to the home of a family member in Washington State, where she was able to call her husband who remained in Honduras. *Id.* ¶ 49. Her husband told SMF that ARM was in a shelter in New York. *Id.* SMF then spoke with a social worker who had also talked to her husband, and the social worker confirmed that ARM was in New York. *Id.* ¶ 50. SMF was then allowed to have short video chats with ARM about once per week. *Id.* In July 2018, ARM was released to SMF. *Id.* ¶ 55. At their reunion, SMF observed that ARM had lost weight and had head lice. *Id.* ¶ 63.

Plaintiffs allege that while ARM was in Cayuga Centers's care, she was administered vaccines without SMF's knowledge or consent. *Id.* ¶ 60. SMF does not know if ARM was given asthma medication during her time at Cayuga Centers. *Id.* ¶ 61. ARM slept in the same bed as other children and was told by staff that SMF had abandoned her permanently. *Id.* ¶ 64-65. After being reunited, ARM was emotionally distant, experienced frequent nightmares, and expressed fear of being alone. *Id.* ¶ 66-67.

ORDER – 3

SMF also experienced distress, depression, and anxiety while separated from ARM. *Id.* ¶ 75. Plaintiffs allege that SMF and ARM suffered physical, mental, and emotional harm due to their detention in the harsh conditions of the *heilera* and their subsequent two-month long separation. *Id*. ¶¶ 69-78.

Plaintiffs brought this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671 et seq., seeking compensation for the harms they have suffered as a result of their forced separation under the Zero Tolerance policy. *Id.* ¶ 7. Plaintiffs assert four claims under FTCA: (1) intentional infliction of emotional distress ("IIED"); (2) abuse of process; (3) wrongful child abduction; and (4) negligence during ARM's time in ORR custody. *Id.* ¶ 82-103. Plaintiffs seek compensatory damages in the amount of $3,000,000 for harm to SMF and $3,000,000 for harm to ARM. *Id*. at 20-21. Plaintiffs allege that they both continue to suffer from emotional and mental trauma due to Defendant's actions *Id*. ¶ 79.

On November 1, 2022, the Government filed the instant motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), or dismissing Plaintiff's second and third causes of action pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. # 12. The Court turns to that motion now.

### III.  LEGAL STANDARDS

#### A.  Rule 12(b)(1)

A party may move to dismiss a case for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts are tribunals of limited jurisdiction and may only hear cases authorized by the Constitution or a statutory grant. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The burden of establishing subject-matter jurisdiction rests upon the party seeking to invoke federal jurisdiction. *Id*. When assessing jurisdiction, the Court must accept as true the allegations and facts set forth in the complaint. *Peña Arita v. United States*, 470 F.Supp.3d 663, 679 (S.D. Tex. June 30, 2020). A motion to dismiss for lack of subject matter jurisdiction should be granted only

ORDER – 4

"if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* If it is determined that a federal court lacks subject-matter jurisdiction, the court has no choice but to dismiss the suit. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

A challenge brought under Rule 12(b)(1) may be facial, where the inquiry concerns the allegations made in the complaint; or factual, where the court may look beyond the complaint to extrinsic evidence. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *see also McCarthy v. U.S.*, 850 F.2d 558, 560 (9th Cir. 1988) ("Moreover, when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.").

First, the Government moves to dismiss the entirety of Plaintiffs' claims for three reasons. First, the Government argues that the discretionary function exception of the FTCA bar Plaintiffs' claims. Dkt. # 12 at 9-17. Second, the due care exception of the FTCA also bars Plaintiffs' claims. *Id.* at 17-18. Third, there is no private person analogue for any of Plaintiffs' causes of action. *Id.* at 19. Next, the Government argues that Plaintiffs' negligence claim is barred by the FTCA's independent contractor exclusion. *Id.* at 20-22.

**B.      Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) challenge, the court must assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Instead, the plaintiff must

ORDER – 5

point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Twombly*, 550 U.S. at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, the Government argues that Plaintiffs fail to allege sufficient facts to sustain a claim for abuse of process or wrongful child abduction under Texas law. Dkt. # 12 at 22-24. It is undisputed that Texas law applies to Plaintiffs' claims. *Richards v. United States*, 367 U.S. 1, 10 (1962).

## IV.   DISCUSSION

### A.   Discretionary Function Exception

The Government asserts that the discretionary function exception ("DFE") bars Plaintiffs' claims because the decision to detain SMF separately from ARM involved an element of judgment or choice and is susceptible to policy analysis.[2] Dkt. # 12 at 13. In response, Plaintiffs argue the DFE does not apply because "federal officers do not have discretion to violate federal law, including the U.S. Constitution" and Plaintiffs' injuries "did not result from any discretionary decision or judgment made by immigration officers in the field." Dkt. # 17 at 3. In its reply, the Government contends for the first time that Plaintiffs cannot circumvent the first prong of the DFE by alleging "systemic, involuntary" separation of families because the United States has not waived sovereign immunity for systemic torts. Dkt. # 19 at 2.

As a sovereign, the United States is immune from suit and may only be sued "to the extent that it has waived its immunity[.]" *United States v. Orleans*, 425 U.S. 807, 814,

---

[2] The United States briefly argues that Plaintiffs' claim that SMF and ARM suffered harm related to conditions of their confinement is also barred by the DFE. Dkt. # 12 at 16. Plaintiffs, however, do not advance this claim in their complaint. According to Plaintiffs, these allegations are "factual allegations primarily aimed at demonstrating the harm resulting from the separations" and not standalone claims. Dkt. # 17 at 11 (quoting *A.P.F. v. United States*, 492 F. Supp. 989, 996-97 (D. AZ. July 27, 2020)). Therefore, the Court will not address this argument.

ORDER – 6

96 S. Ct. 1971 (1976). FTCA is a "limited waiver of sovereign immunity" that authorizes individuals to sue the United States for damages caused by "negligent or wrongful acts or omissions" of any Government employee acting within the scope of their employment. *Gonzales v. United States*, 814 F.3d 1022, 1026 (9th Cir. 2016). Under FTCA, the United States may be held civilly liable for the torts of its employees "in the same manner and to the same extent as a private individual under like circumstances." *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000) (citing 28 U.S.C. § 2674). FTCA's waiver of sovereign immunity, however, is subject to exceptions. *See* 28 U.S.C. § 2680.

The discretionary function exception is one such exception. *Peña Arita*, 470 F.Supp.3d at 683. The court uses a two-part test to determine if the discretionary function exception applies. *A.F.P. v. United States*, No. 1:21-cv-00780-DAD-EPG, 2022 WL 2704570, at *11 (E.D. Cal. July 12, 2022). First, the court must determine whether the challenged conduct is "discretionary in nature," that is, whether the actions "involve an element of judgment or choice." *Id.* Second, if the court determines the challenged conduct is discretionary, it then looks to whether the discretion is the "kind that the [DFE] was designed to shield," that is, discretion rooted in public policy considerations. *Id.* If the DFE applies, the United States retains its sovereign immunity, the court lacks subject matter jurisdiction, and the claim must be dismissed. *Id.*; *see also Nurse*, 226 F.3d at 1000. The Government bears the burden of proving the DFE applies. *A.F.P.*, 2022 WL 2704570, at *11.

Here, the Government's argument fails at the first prong. The DFE does not shield the government from liability for unconstitutional conduct. *Id.* at *12; *see also C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020) (applying Arizona law to find that plaintiffs had "plausibly alleged that the government's separation of their families violated their constitutional rights, which is not shielded by the discretionary function exception."); *see also A.F.P.*, 2022 WL 2704570, at *12-13 (applying Texas law, the court declined to dismiss plaintiffs' IIED, abuse of

ORDER – 7

1  process, negligence due to family separation, and negligence concerning a child's time in
2  ORR custody claims on the basis of the DFE when plaintiffs alleged that the
3  government's separation of a father and son violated their constitutional rights).

4  The Government asserts that Plaintiffs fail to allege a *specific* constitutional
5  violation that would preclude the application of the DFE. Dkt. # 12 at 19-20. However,
6  other courts in this circuit have held that the DFE does not apply to FTCA claims
7  challenging the Trump administration's family-separation policy when the plaintiffs
8  allege a mere "plausible constitutional violation." *Fuentes-Ortega v. United States*, 640
9  F. Supp. 3d 878, 883 (D. Ariz. 2022) (collecting cases). Here, Plaintiffs specifically
10 allege in the complaint that the federal immigration officials acted in "callous disregard"
11 of Plaintiffs' "legal rights, personal dignity, and family integrity" when they separated
12 SMF and ARM.  Dkt # 1 ¶ 72. The right to family integrity is a constitutional right. *See*
13 *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972) (stating "the integrity of the
14 family unit has found protection in the Due Process Clause of the Fourteenth
15 Amendment"); *see also Morris v. Dearborne*, 181 F.3d 657, 666-67 (5th Cir. 1999)
16 (holding that the "Constitution protects the right to family integrity" that is guaranteed
17 "by the due process clause of the Fourteenth Amendment"). Because Plaintiffs have
18 plausibly alleged a violation of their constitutional right to family integrity, and
19 "[b]ecause each of Plaintiffs' causes of action stem from this separation, none are barred
20 by the [DFE]." *A.P.F.*, 492 F. Supp. 3d at 998.

21 And as to the Government's contention that Plaintiffs' claims are "systemic torts,"
22 and therefore barred by the FTCA, this Court disagrees. FTCA allows a plaintiff to sue
23 the United States for damages arising from certain torts committed by federal employees
24 acting within the scope of their employment. *Valdez v. United States*, 56 F.3d 1177, 1179
25 (9th Cir. 1995) (citing 28 U.S.C. § 2680(a)). The complaint makes clear that Plaintiffs do
26 broadly oppose the United States's Zero-Tolerance Policy, but also allege specific acts by
27 specific federal employees leading to potential liability. *See, e.g.,* Dkt. # 1 ¶¶ 24-25

28 ORDER – 8

(Plaintiffs describe officers calling out SMF's name and taking ARM away, and describe social worker who instructed SMF to say goodbye to ARM). Because of this, the Court finds that Plaintiffs do not assert a general systemic tort claim and rejects the Government's argument raised in its reply. *See Wilbur P.G. v. United States*, No. 4:21-cv-04457-KAW, 2022 WL 3024319, at *6 (N.D. Cal. May 10, 2022) (district court found that Plaintiffs claims related to border separation were not systemic tort claims). Since the first prong of the DFE is not met and the exception does not apply, the Court need not reach the second step of the test. *A.F.P.*, 2022 WL 2704570, at *11.

### B. Due Care Exception

The Government contends that the due care exception bars Plaintiffs' claims related to the decision to detain SMF and ARM separately because the Government was "required to 'transfer the custody' of children to the care of ORR 'not later than 72 hours after' determining that there [was] no parent available to provide care and physical custody for A.R.M." Dkt. # 12 at 18 (citing 8 U.S.C. § 1232(b)(3), the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA")). FTCA prevents the United States from being liable for "any claim based upon an act or omission" of a Government employee "exercising due care" in the execution of a statute or regulation. 28 U.S.C. § 2680(a). The Ninth Circuit follows the two-part test set forth in *Welch v. U.S.*, 409 F.3d 646 (4th Cir. 2005), to determine if a due care exception applies to a claim. Under *Welch*, the due care exception applies if (1) the statute or regulation at issue specifically proscribes a course of action for an officer to follow, and (2) if the specific action is mandated, the officer exercised due care in following the statute or regulation. 409 F.3d 646, 652. If due care is exercised, the United States has not waived its sovereign immunity. *Id.* In response to the Government, Plaintiffs argue the due care exception does not apply because the Government's employees separated Plaintiffs pursuant to an executive *policy* which was not shielded by the due care exception. Dkt. # 17 at 14-15.

ORDER – 9

1  Further, Plaintiffs argue, the TVPRA does not require the separation of families, and
2  those employees did not implement the separation with due care. *Id.* In reply, the
3  Government asserts that after the decision to prosecute SMF was made, the law required
4  that ARM be transferred to ORR custody, but does not address whether such transfer was
5  handled with due care. Dkt. # 19 at 7-8.

6        The Court finds the Government's argument unpersuasive. To comport with the
7  first prong set out in *Welch*, the conduct must be mandated or required, not merely
8  authorized. *See A.F.P.*, 2022 WL 2704570, at *15 (stating that under *Welch* the conduct
9  as issue must be required by statute or regulation). The Government relies on the TVPRA
10 to justify the alleged requirement to separate of SMF and ARM, arguing that the TVRPA
11 required the Government to transfer ARM to ORR after the United States, in its
12 discretion, determined that ARM was "unaccompanied." However, the separation of
13 SMF and ARM actually occurred pursuant to executive policy, not a statutory or
14 regulatory mandate such as the TVPRA. *See* Exec. Order No. 13841, 83 FR 29435
15 (2018). Indeed, the Government does not cite to any statute or regulation that requires the
16 separation of families at the border.[3] Moreover, courts have held that family separation
17 "established by executive policy" is "not covered by the due care exception." *A.F.P.*,
18 2022 WL 2704570, at *15 (quoting *A.P.F.*, 492 F. Supp. at 996); *see also Fuentes-*
19 *Ortega*, 640 F. Supp. 3d at 884 (noting that, "other courts have found that separations of
20 this kind lack due care."). Because the Government cannot point to a specific statute or
21 regulation that mandated the separation of SMF and ARM, the first *Welch* prong is not
22 satisfied, and the due care exception does not apply.

---

[3] The TVPRA requires the transfer of custody of unaccompanied minors. *See* 8 U.S.C. § 1232(b)(3). It does not require the transfer of children who are apprehended with a parent who is then detained for illegal-entry prosecution. *See Jacinto-Castanon de Nolasco v. U.S. Immigration and Customs Enforcement*, 319 F. Supp. 3d 491, 500-01 (D.D.C. 2018).

ORDER – 10

### C.    Private Person Analogue

The Government argues that Plaintiffs fail to establish a private person analogue for the acts that they challenge as required by FTCA. Dkt. # 12 at 19. According to the Government, only the federal government has the authority to "enforce federal criminal and immigration laws and make detention determinations," so that no private person analogue support Plaintiffs' claims. *Id.* Plaintiffs assert that in Texas there is a private person analogue for IIED, abuse of process, negligence, and wrongful child abduction claims. Dkt. # 17 at 17-18. The Government acknowledges in its reply that numerous courts have found private-person analogues in the context of the federal government's Zero Tolerance policy, but respectfully disagrees with those decisions and urges this court to rule differently. Dkt. # 19 at 9. This Court declines to do so.

To establish subject matter jurisdiction under FTCA, Plaintiffs must show that a "private individual under like circumstances would be liable under state law." *A.F.P.*, 2022 WL 2704570, at *9. To do this, Plaintiffs' allegations must demonstrate a "persuasive analogy with private conduct." *C.M.*, 2020 WL 1698191, at *2. The Ninth Circuit acknowledges that since "the federal government 'could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy.'" *Dugard v. United States*, 835 F.3d 915, 919 (9th Cir. 2016) (quoting *LaBarge v. Mariposa Cty.*, 798 F.2d 364, 367 (9th Cir. 1986)).

The Government's argument is unavailing. By arguing that no private person can detain someone at the border, the Government attempts to move the goal posts on the issue. Contrary to the Government's characterization of Plaintiffs' allegations, the fact that SMF and ARM were detained at the border is not the basis for Plaintiffs' claims. Rather, Plaintiffs' claims rest on multiple factual allegations that the Government's separation of Plaintiffs caused them to suffer emotional trauma. *See* Dkt. # 1 ¶¶ 5, 66, 68, 73, 76, 79, 91.

ORDER – 11

1      Courts have recognized private person analogies for family separation IIED claims
2  brought under Texas law. *A.F.P*, 2022 WL 2704570, at *10 (applying Texas law to hold
3  that there is a private person analogue under the FTCA for IIED claims stemming from
4  family separation at the border); *see also M.D.C.G. v. United States*, No. 7:15-cv-00552,
5  2016 WL 6638845, at *11-12 (S.D. Tex. Sept. 13, 2016) (allowing an IIED claim to
6  proceed based on alleged trauma where the government separated a mother and daughter
7  for three days and separated an accompanying minor for a month). The same is true of
8  Plaintiffs' negligence, abuse of process, and child abduction claims. *A.F.P.*, 2022 WL
9  2704570, at *10; *Fuentes-Ortega v. United States*, 640 F. Supp. 3d at 884 (court declined
10 to dismiss IIED, negligence, and abuse of process claims on the basis of private analog);
11 *B.Y.C.C. v. United States*, Case Nos. 22-6586 (MAS) (DEA), 22-6587 (MAS), 22-6588
12 (MAS (DEA), 2023 WL 5237147, at *14 (D. N.J. Aug. 15, 2023) (district court declined
13 to dismiss child abduction cause of action on the basis of a private analog). Here, there is
14 a private person analogue for Plaintiffs' claims under FTCA and this exception does not
15 bar Plaintiffs' claims.

   **D.     Independent Contractor Exclusion**

   The United States argues that this Court lacks subject matter jurisdiction over
Plaintiffs' negligence claim related to ARM's treatment while in ORR custody due to the
FTCA's independent contractor exclusion. Dkt. # 12 at 20. Because Cayuga Centers staff
(whom Plaintiffs allege failed to provide ARM with proper nutrition and told ARM that
her mother permanently abandoned her) are contractors of the United States, the
Government argues that FTCA excludes liability for their actions. *Id.* According to the
Government, Plaintiffs rest their negligence claim on a theory of vicarious liability,
which is simply incompatible with the facts alleged in the complaint. Plaintiffs respond
that their negligence claim does not implicate the independent contractor exception at all
because the complaint alleges that *United States employees* separated SMF and ARM,

ORDER – 12

failed to facilitate SMF's communication with ARM, and failed to inform Cayuga Centers regarding ARM's asthma and health information. Dkt. # 17 at 18-19.

The Government submits the declaration of James De La Cruz, a Senior Advisor in the Office of the Director of ORR and asserts that "ORR did not supervise or control the day-to-day operations or detailed physical performance of Cayuga Centers or its staff." Dkt. # 14 (De La Cruz Declaration) ¶ 9. According to Mr. De La Cruz, ORR only conducts periodic visits to contractors at least monthly "to ensure that care providers meet minimum standards for the care and timely release of unaccompanied [] children," and "abide by all Federal and State laws and regulations, licensing and accreditation standards, ORR policies and procedures, and child welfare standards." *Id.* (quoting ORR Unaccompanied Children Program Policy Guide, Section 5.5[4]). Relying on *Autery v. United States*, 424 F.3d 944 (9th Cir. 2005), the Government argues that because the United States did not have control over Cayuga Centers "day-to-day operations," but instead conducted "general oversight" over the contractor's performance, the independent contractor exclusion applies. This Court disagrees.

"Courts have construed the independent contractor exception to protect the United States from vicarious liability for the negligent acts of its independent contractors." *Edison v. United States*, 822 F.3d 510, 518 (9th Cir. 2016) (citing *Yanez v. United States*, 63 F.3d 870, 872 n.1 (9th Cir. 1995)). But this exception "has no bearing on the United States's FTCA liability for its *own* acts or omissions." *Id.* The United States may still be held directly liable for its own negligence even if it has delegated some responsibilities to an independent contractor. *Id.* (citing *Logue v. United States*, 412 U.S. 521, 532-33, 93 S. Ct. 2215 (1973)). The independent contractor exception prevents this Court from exercising subject matter jurisdiction only when the United States has delegated its entire duty of care. *Id.*

---

[4] Available at: https://www.acf.hhs.gov/orr/policy-guidance/unaccompanied-children-program-policy-guide.

ORDER – 13

Here, Plaintiffs allege that "Defendant's agents had a duty to Plaintiff A.R.M. to act with ordinary care and prudence so as not to cause harm or injury to her while she was held at Cayuga Centers under ORR custody." Dkt. # 1 ¶ 101. Further, Plaintiffs allege that "Defendant's agents failed to act with ordinary care and breached their duty of care owed to Plaintiff A.R.M." Much like the Plaintiffs in *A.F.P.*, the allegations here could be interpreted as an argument for vicarious liability based on the actions of Cayuga Centers staff. *A.F.P.*, 2022 WL 2704570, at *17. However, SMF and ARM allege that ARM suffered substantial damages as a direct and proximate result of the conduct of United States employees described in the Complaint. Incorporating these allegations by reference into Plaintiffs' negligence claim, *see* Dkt. # 1 ¶ 100 ("All the foregoing allegations are repeated and realleged as though fully set forth herein."), Plaintiffs base their suit on the Government's separation of SMF and ARM while in federal detention and the cascade of harms that befell ARM as a "direct and proximate result" of that separation. *See generally* Dkt. # 1. However, to the extent the Plaintiffs' negligence claim is based on the actions of Cayuga Centers staff, it is barred by the independent contractor exclusion. *A.F.P.*, 2022 WL 2704570, at *17 (holding that to the extent plaintiffs' negligence claim is based on vicarious liability of children's shelter staff, it is barred by the independent contractor exclusion).

E. **Abuse of Process**

The Government further argues that Plaintiffs fails to state an actionable claim for abuse of process under Federal Rule of Civil Procedure 12(b)(6). Dkt. # 12 at 22-23. Here, Plaintiffs allege that "Defendant's employees abused legal processes within their control, when after initiating a prosecution against S.M.F. under 8 U.S.C. § 1325, they used the resulting legal proceedings to designate A.R.M. an unaccompanied minor." Dkt. # 1 ¶ 88.

Under Texas law, "[a]buse of process is the malicious misuse or misapplication of

ORDER – 14

process in order to accomplish an ulterior purpose." *Liverman v. Payne-Hall*, 486 S.W.3d 1, 5 (Tex. App. 2015) (quotations and citation omitted). To state a claim, a party must show the following:

> (1) that the defendant made an illegal, improper or perverted use of the process, a use neither warranted nor authorized by the process;
>
> (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process; and
>
> (3) that damage resulted to the plaintiff as a result of such illegal act.

*Id.*

An abuse of process claim requires a showing of "an improper use of the process after its issuance." *RRR Farms, Ltd. v. Am. Horse Prot. Ass'n, Inc.*, 957 S.W.2d 121, 134 (Tex. App. 1997). The term "process" is defined as "[a] summons or writ, esp. to appear or respond in court." *Pisharodi v. Watts L. Firm, L.L.P.*, No. 13-07-665-CV, 2008 WL 3522119, at *2 (Tex. App. Aug. 14, 2008) (quoting BLACK'S LAW DICTIONARY 1010 (8th ed.2005)). "Without a showing that the use of the process itself was illegal, a claim for abuse of process must be dismissed." *Andrade v. Chojnacki*, 65 F. Supp. 2d 431, 469 (W.D. Tex. 1999).

This Court recently dismissed an abuse of process claim for failure to state a claim in a matter involving similar facts brought by families separated at the Texas border. *See E.L.A., et al. v. United States*, No. C2:20-cv-1524-RAJ, 2022 WL 2046135, at *5-6 (W.D. Wash. June 3, 2022). The Government urges this Court to again find that Plaintiffs allegations fail to state the first element of an abuse of process claim under Texas law because SMF was properly charged with illegal entry, just as the parent in *E.L.A.* Dkt. # 12 at 23 (citing *E.L.A.*, 2022 WL 2046135, at *5-6); *see also E.L.A. v. United States,* No. 2:20-cv-1524-RAJ, 2022 WL 11212690 (W.D. Wash. Oct. 19, 2022) (denying plaintiffs' request for reconsideration of the dismissal of the abuse of process claim). Plaintiffs respectfully disagree with this Court's prior analysis and assert that the fact that the

ORDER – 15

prosecution against SMF was lawful should not be determinative to this Court's inquiry. Dkt. # 17 at 21. Instead, Plaintiffs argue, the focus should be on their allegation that SMF's transfer to federal criminal custody was only conducted in order to designate ARM as an unaccompanied minor. *Id.* (citing Dkt. # ¶ 37).

The Court sees no reason to depart from its previous holding, especially considering that Plaintiffs make mostly identical abuse of process allegations in the complaints for *E.L.A.* and the matter at hand. *Compare* Dkt. # 1 ¶¶ 87-92 *with E.L.A.*, No. 2:20-cv-1524-RAJ, Dkt. # 1 ¶¶ 88-92. Here, Plaintiffs allege that Defendant had an ulterior motive and caused damage to Plaintiffs. But they again attack Defendant's *reasons* for charging SMF with illegal entry (to designate ARM as unaccompanied), not the process itself. Dkt. # 1 ¶¶ 88-91. And when "the process is used for the purpose for which it is intended, even though accomplished for an ulterior motive, no abuse of process has occurred." *Moore v. Bushman*, 559 S.W.3d 645, 653 (Tex. App. 2018). Plaintiffs' second cause of action for abuse of process is **DISMISSED**.

### F. Wrongful Child Abduction

Finally, the Government argues that Plaintiffs' third cause of action for wrongful child abduction should be dismissed because this tort only applies when a person violates an existing custody order issued by a court, and Plaintiffs did not have an existing custody order at the time of their separation. Dkt. # 12 at 23-24. Plaintiffs argue that the Texas common law tort of child abduction does not require the violation of a court order and exists where "someone entices away or harbors [a] minor child." Dkt. # 17 at 22.

Both parties cite to *Silcott v. Oglesby*, a Texas Supreme Court case explicitly recognizing an actionable tort for child abduction "in violation of a custody order[.]" 721 S.W.2d 290, 293 (Tex. 1986). However, Plaintiffs correctly point out that the Texas Supreme Court based its acknowledgement of the common law tort on the language set forth in the Restatement (Second) of Torts § 700, which provides: "One who, with

ORDER – 16

knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent." This language is broader than the statutory language contained within the Texas Family Code that prohibits taking or retaining possession of a child in violation of "court-ordered right of possession of or access to a child...." Dkt. # 12 at 23 (citing Tex. Fam. Code § 42.002(1)-(2)). Although the *Silcott* court provided that a statutory cause of action would apply to cases tried from September 1983 onward, the court noted that the existence of a civil cause of action did not prevent them from also recognizing the existence of a common law cause of action for child abduction. *Silcott*, 721 S.W.2d at 293.

And in any event, several other district courts around the country have recognized a common law tort of child abduction under Texas law and allowed parents and children in similar circumstances to pursue claims related to their separation the border. *See K.O. by and through E.O. v. United States*, Case No. 4:20-123015-TSH, 2023 WL 131411, at *11 (D. Mass. Jan. 9, 2023) (district court found that Texas recognizes a cause of action when children are abducted from their rightful custodian); *D.A. v. United States*, Case No. EP-22-CV-00295-FM, 2023 WL 2619167, at *10 (W.D. Tex. Mar. 23, 2023) (district court found that Texas courts recognize a tort cause of action for interruption of the parent-child relationship when someone abducts, entices away, or harbors a parent's minor child); *see also B.Y.C.C. v. United States*, 2023 WL 5237147, at *14 (acknowledging cause of action in Texas when children are abducted from their rightful custodians and denying request to dismiss child abduction claim when plaintiffs alleged that CBP officers removed children from parents' care and custody without parents' consent) (unpublished). Here, Plaintiffs allege that Defendant's employees compelled ARM to leave SMF without SMF's consent and subsequently concealed ARM's location even after SMF completed her sentence for illegal entry. Dkt. # 1 ¶¶ 94-97. Based on the facts alleged in the complaint, the Court declines to dismiss Plaintiffs' claim for wrongful

ORDER – 17

child abduction under Texas law.[5]

## V. CONCLUSION

Based on the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss. Dkt. # 12. Plaintiffs' abuse of process claim is **DISMISSED** without prejudice. Within twenty-one (21) days from the date of this Order, Plaintiffs may file an amended complaint addressing the deficiencies described above. If Plaintiffs do not file an amended complaint, the Court may dismiss the challenged claims.

DATED this 25th day of September, 2023.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

---

[5] The Government argues in reply that if this Court declines to dismiss Plaintiffs' child abduction claim, it must dismiss their IIED claim as duplicative under Texas law, citing *Standard Fruit and Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62 (Tex. 1998). Dkt. # 19 at 12. However, in *Standard*, the court held that an IIED action cannot be maintained when the risk of emotional distress will result is "merely incidental" to the commission of some other tort. 985 S.W.2d at 68. Here, in contrast, Plaintiffs allege that Defendant's conduct is "intentional," "reckless," "extreme," and "outrageous," and caused great emotional stress to both SMF and ARM. Dkt. # 1 ¶¶ 83, 84. Therefore, the Court declines to dismiss Plaintiffs' IIED claim for this reason.

ORDER – 18